CATHARINE DAWSON, RESPONDENT *v.* THE CITY OF TROY, APPELLANT.

*Action by a married woman for loss of services, resulting from personal injuries —*
*her right to bring it — competency of testimony as to her future recovery — recovery*
*for future suffering, when improper — notice to municipality before suit.*

In an action brought to recover damages for injuries sustained by the plaintiff in falling upon ice in the street of the defendant, a municipal corporation, a doctor was allowed to testify as follows: "She will very likely recover in time;" "it will probably take until a change of life."

*Held*, that this testimony was incompetent. (LANDON, J., dissenting.)

The court charged, against defendant's request and exception, that if the jury believed that there should be future bodily pain, they might allow for it.

*Held*, that as the plaintiff herself had only testified to her present pain and suffering, and there had been no evidence that such pain and suffering would continue (as the doctor had not testified that the plaintiff would suffer any pain), that the jury could not, under the evidence in this case, allow damages for future suffering. (LANDON, J., dissenting.)

The plaintiff testified that at the time of the injury she was working in a mill that she always collected her wages, and as to the amount of such wages ; that she had no property except what she earned.

*Held*, that this evidence did not justify the court in charging the jury — that if the plaintiff had been allowed to make bargains in her own behalf for her labor and services, and had been accustomed to accept and appropriate the compensation therefor, as she saw fit, with the approval and consent of her husband, then she could recover for any loss in this respect — as there was no evidence that she was carrying on any business trade or labor upon or for her sole and separate account, and the fact that she collected her wages was quite consistent with her collecting them for her husband. (LANDON, J., dissenting.)

A former action had been brought for this same cause by the service of a summons and complaint on the mayor of the defendant, and it was claimed that this was a sufficient service of a notice within the provision of the statute providing that no action shall be maintained against a municipal corporation under such circumstances, unless notice of the intention to commence such action shall have been filed with the counsel for the corporation within six months.

*Held*, that the service of that complaint was not notice of an intention to commence that action, because it was itself the commencement of the action.

That it was not a notice of intention to commence the present action, because the plaintiff had then, and could have had, no such intention. (LANDON, J., dissenting.)

APPEAL by the defendant from a judgment entered upon a verdict for $5,000, upon a trial had at the Saratoga Circuit.

On the 21st of January, 1887, the plaintiff, a married woman, after dark in the evening, while walking upon River street, in the city of Troy, slipped upon the ice, fell and sustained injuries, to recover damages for which this action was brought, the defendant being charged therein with negligence.

*R. A. Parmenter*, for the appellant.

*T. F. Hamilton*, for the respondent.

LEARNED, P. J.:

In *Strohm* v. *New York, Lake Erie and Western Railroad Company* (96 N. Y., 305), the witness had testified that the plaintiff's condition was very likely to be permanent. The objection was

made to the words " very likely " as speculative. The witness then
said that such a patient might develop epilepsy, etc. The court
held that this was too speculative.

In the present case the doctor testified: " She will very likely
recover in time." " It will probably take until a change of life."
This testimony had just that character of probability which the
court held to be improper in the *Strohm Case*. But, furthermore,
the doctor did not testify that plaintiff would probably suffer any
pain in the future. So that there was really no evidence that she
would have further suffering. Whether or not the disease would
be painful in the future was a matter (so far as evidence went), of
conjecture. But the court charged, against defendant's request and
exception, that if the jury believed there would be future bodily
pain they might allow for it. The plaintiff herself testified as to
her present pain and suffering, but without evidence that such pain
and suffering would continue ; we think the jury could not, under
the case cited, allow for it.

The plaintiff testified that at the time of the injury she was work-
ing in a mill and always collected her wages, and the rate of such
wages. That she had no property except what she earned. This
seems to be all the evidence as to her right to her wages. The court
charged (and defendant excepted), that if she had been allowed to
make bargains in her own behalf, for her labor and services, and
had been accustomed to receive and appropriate the compensation
therefor as she saw fit, with the approval and consent of her husband,
then she could recover for any loss, etc.

It seems to us that there was nothing in the case to justify the
supposition, and that the doctrine is not in accordance with *Filer* v.
*New York Central Railroad Company* (49 N. Y., 47). There
certainly is no evidence in the language of that case that she was
carrying on any business, trade or labor upon or for her sole and
separate account. That she collected her wages is quite consistent
with her collecting them for her husband.

I do not feel willing to disregard the requirements of chapter 572,
Laws of 1886. The statute says: " No action   *   *   *   shall
be maintained   *   *   *   unless notice of the intention to com-
mence such action, etc.,   *   *   *   shall have been filed with the
counsel to the corporation.   *   *   *   within six months," etc.

The question is, was the commencement of the former action for this same cause, by service of summons and complaint on the mayor, a compliance with this statute? The service of that complaint was not notice of an intention to commence that action, because it was itself the commencement. It was not notice of an intention to commence this action, because the plaintiff had then, and could have had, no such intention. To construe the service of that former summons and complaint as a filing of a notice of intention with the corporation counsel under that statute seems to me to be an evasion, such as courts sometimes make to relieve a party from a mistake, and such as always produces mischief in the end by making the law uncertain. The plaintiff did not comply with the statute, and did not intend to comply with the statute; probably overlooked it. She commenced her action without having filed such notice of intention; and now she asks the court, out of sympathy for her, to say that a complaint which was not, and could not have been, a notice of intention to commence this present action, was such notice; and that a paper served on the mayor was a paper filed with the corporation counsel.

I do not think our sympathy should lead us to disregard the plain words of the statute. We might as well say that if the corporation counsel had heard in the street that the plaintiff was about to commence this action, such hearing would relieve her from the requirements of that statute. It would give them notice enough to make the necessary investigation as said in *Meyer* v. *Mayor* (12 N. Y. State Rep., 675). The statute is plain and it is best to adhere to it.

Judgment reversed, and new trial granted, costs to abide event.

INGALLS, J., concurred in the result on the last ground.

LANDON, J. (dissenting):

The snow and ice had been removed from the sidewalk, except in front of the store where the plaintiff fell. Walking along at night, the sidewalk dimly lighted, without thought of any ice and without notice of it, she stepped upon a body of ice and suddenly fell and received severe injuries. The snow had been allowed to remain upon this portion of the walk, and the water from a conductor from the roof had discharged upon it, and the mass was frozen solid and was about eight inches thick. One witness

describes it as rolling and ridgy. It had been in this condition for at least ten days before plaintiff fell. The snow at this place had been shoveled off but once previous to the accident, and then only about half of the walk was cleared.

We think the plaintiff made a case for the consideration of the jury. Here was something more than the presence of snow and ice. Both were suffered to accumulate in bad and dangerous forms and long remain so.

Recent cases in the Court of Appeals seem to modify the rigor of the rule which requires a municipal corporation to keep sidewalks reasonably clear of snow and ice. (*Kaveny* v. *City of Troy*, 108 N. Y., 571; *Kinney* v. *City of Troy*, Id., 567; *Taylor* v. *City of Yonkers*, 105 id., 202; *Muller* v. *City of Newburgh*, 32 Hun, 24; S C., 105 N Y., 668; *Smith* v. *City of Brooklyn*, 36 Hun, 224, S. C., 107 N Y., 655.) Assuming that no more is now required than that the city shall keep the ice and snow covered sidewalk reasonably clear, after reasonable notice, of such unevenness and irregularities of surface as give an added peril to the mere slipperiness, then the jury were justified in finding against the defendant.

The judgment should be affirmed, unless the other errors alleged require its reversal.

The injury was received January 21, 1887. Chapter 572, Laws of 1886, provides that " no action against the mayor, aldermen and commonalty of any city in this State having fifty thousand inhabitants or over, for damages for personal injuries alleged to have been sustained by reason of the negligence,  *  *  *  shall be maintained, *  *  *  unless notice of the intention to commence such action, and of the time and place at which the injuries were received shall have been filed with the counsel to the corporation, or other proper law officer thereof, within six months after such cause of action shall have accrued."

It was admitted that the city of Troy had upwards of 50,000 inhabitants. On July 8, 1887, an action to recover upon this cause of action was commenced, but without the previous service of the notice of intention to bring it. Issue was joined by the service of an answer by the corporation counsel, and then on September 13, 1887, that action was discontinued. September 16, 1887, the notice of intention was served, and on September 20, 1887, this action

was commenced. Objection was made to the admission of the evidence of notice of intention, because given too late; this was overruled, a motion to dismiss the complaint upon the same ground was denied; the defendant duly excepted.

In *Meyer* v. *Mayor* (12 N. Y. S. Rep., 674), the action was commenced within six months without previous service of notice. The court of Common Pleas held, that the commencement of the action within the six months was sufficient notice, as thereby the purposes of the notice were accomplished, namely, notice to the city of the claim near enough to its accruing to enable the city to make proper investigation. The charter of the city of Troy requires a claimant of damages, as a condition precedent to the right to maintain an action, to serve the verified claim, with an abstract of the facts, upon the comptroller of the city, and that it must appear that the comptroller did not within sixty days audit the same. (Laws of 1872, chap. 129, § 10, title 6.) This verified claim was duly served April 25, 1887. The facts thus required by the charter were shown on the trial. The city thus had ample and timely notice of the claim. The complaint in the first action was " notice of the intention to commence *such* action " as was therein specified. The second action was *such* an action. As the objection in this case derives its force from the letter, and not from the spirit of the statute, it is proper to notice that the letter does not defeat the second action.

Evidence was given by the plaintiff to the effect that prior to the injury she was in good health; that at the time she was with child, and on the following morning she had a miscarriage. That she did not recover her health, and that Dr. Mitchell, a physician, examined her three times from March to September. He testified that she had chronic endomentritis; that while it might be produced by other causes, miscarriage was one of the usual causes; and the fact of a miscarriage would tend to show that it was not due to other causes. He was then asked, " What, in your opinion, is the probability of her recovery from this disease ? " This was objected to upon the ground that there was no proof that the injury caused the disease. The objection is not well taken. There was some evidence tending to show that the injury caused the disease. Absolute proof there was not, nor was it needed. The evidence

was such as to amount to a probability that the injury caused the disease, and sufficient, if it led to a verdict that it caused it, to support that verdict.

The physician testified that she probably would not recover from the disease until she attained the age of forty. She was twenty-eight years old at the time of the trial. The court charged the jury that if they believed, from the evidence, she would suffer future bodily pain, they could allow her compensation for that. The objection that there was no evidence tending to show future suffering was not valid. The rule is that, to entitle a plaintiff to recover present damages for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury. (*Strohm* v *The N. Y. L. E. and W. R. R. Co.*, 96 N. Y., 306.) Consequences, says the court, in the case cited, which are contingent, speculative, or merely possible, are not proper to be considered in ascertaining the damages. We know the plaintiff was in good health before the injury, that she was immediately prostrated and suffered a miscarriage, followed by chronic endomentritis, a not unusual consequence of such miscarriage; that she is not likely to recover from it until after twelve years; that she is unable to perform her usual labor; that she suffers pain in her back all the while. These are facts, if the testimony is reliable. They are proper for the consideration of the jury. It is their province to declare the proper conclusion inferable from them.

No error was committed in allowing an amendment to the complaint specifying loss of wages as an item of damage. If the plaintiff, a married woman, rendered no services except those incident to her relation of wife, such as the usual domestic services in her husband's household, then the loss of such service was her husband's loss, not hers. (*Brooks* v. *Schwerin*, 54 N. Y., 343; *Filer* v. *N. Y. C. R. R. Co.*, 49 id., 47.) But if she was accustomed to labor elsewhere, and receive to her own separate use her wages, then she has the right to recover for the loss she has sustained by the injury, which deprived her of the power to labor and receive her earnings to her separate use. (Id.) Thus the court submitted the question to the jury. The claim served upon the comptroller covered such damages.

The court, in its charge, read to the jury portions of the opinion of the court in *Todd* v. *City of Troy.* Exception was taken, and it is now urged that the practice is reprehensible, and was prejudicial to the defendant. It cannot be a sound rule which deprives the court of the use of such aids to accuracy and clearness. It is not urged that the matter read was objectionable as containing bad law, but that the case was an example of the manner in which this defendant, in a similar case, had been punished by the jury, and that their verdict had been upheld by the courts. But the court only read the law; nothing was said by the court to the jury about the results of that case. We do not think that it was improperly used. The other objections urged have been disposed of adversely to the defendant in previous cases, and do not need to be recited here.

The judgment should be affirmed, with costs.

*Judgment reversed, new trial granted, costs to abide event.*