MELVIN HORNE v. CONSOLIDATED RAILWAY, LIGHT AND POWER COMPANY.

(Filed 16 April, 1907).

1. Pleadings—Issues Submitted—Issues Tendered.—When upon the complaint and answer, specifying upon the one side and denying upon the other, there are different phases of negligence claimed by the plaintiff as arising on the facts, it is not error of the Court below to refuse to submit separate issues addressed to the different allegations, if those submitted are germane and give to each party a fair opportunity to present his version on the facts and his view of the law, so that the case may be tried on its merits.

2. Evidence—Expert Witness—Facts—Opinion.—An expert witness may testify to pertinent facts at issue in the case, coming under his own observation, as well as to such expert opinion thereon as is proper and within his peculiar knowledge and training.

3. Same—Finding of Court Below.—The finding of the Court below, upon proper evidence, that a witness is an expert, is conclusive.

4. Electricity—Deadly Wires—Duty of Owners.—It is the duty of those who are allowed to place above the streets of a city wires charged with a deadly current of electricity, or liable to become so charged, to exercise the utmost care, so far as human foresight can reach, in their construction and maintenance.

5. Negligence—Evidence—Nonsuit.—There is no error in the Court below refusing to dismiss the action, as on motion to nonsuit under the statute, it appearing that there was competent evidence of a clear breach of duty on the part of the defendant company in the conditions under which the plaintiff, employee, was required to do his work; in placing a primary wire, charged with a high and dangerous voltage of electricity, under dead wires holding and controlling an electric lamp by which, while in the discharge of his duties, the plaintiff was injured, being necessarily in such position that in raising and lowering the lamp the wires would come in contact, making it probable that the insulation would wear or burn away at a point where, in case the insulation should be worn or burned off, the wires would become charged and plaintiff, in doing his work in the ordinary and usual way, would likely come in contact with an iron awning and ground the current, making serious or fatal injuries almost certain; it further appearing that it was in this manner the injury was caused.

6. **Same—Proximate Cause—Excusable Accident.**—There was no error in the Court below refusing to dismiss an action as on judgment of nonsuit upon the ground that the proximate cause of the injury received was the unexpected sagging of a telephone wire of another company at a different point, which had been left in place above defendant's system, and by means of which defendant's opposite primary wire was grounded, thereby causing the shock and thus rendering the occurrence an excusable accident, when there is evidence tending to show that such result was likely to occur at any time and in various ways.

CIVIL ACTION to recover damages for personal injuries caused by the alleged negligence of defendant, and tried before his Honor, *Jones, J.,* and a jury, at September Term, 1906, Superior Court of NEW HANOVER County.

The three ordinary issues in actions of this character were responded to by the jury:

1. As to negligence on part of defendant causing the injury.

2. Contributory negligence on part of plaintiff.

3. Damages.

Verdict and judgment for plaintiff, and defendant excepted and appealed.

*Rountree & Carr, H. McClammy,* and *W. Kellum* for plaintiff.

*Meares & Ruark* for defendant.

HOKE, J. This cause was before us on a former appeal, and will be found reported in 141 N. C., 50. In that appeal, the facts having been sufficiently stated, the principles of the law were fully declared. On careful examination of this record, we think that the present trial has been conducted in accordance with the former opinion; and the facts being substantially similar, we find no occasion for elaborate statement or discussion.

The plaintiff having, by leave of Court, amended his complaint so as to specify different phases of negligence claimed as arising on the facts, and the answer having been filed making denial, the defendant alleges for error that the Court refused to submit separate issues addressed to the different allegations.

It is well established with us that the form and number of the issues are not material if those submitted are "germane and give each party a fair opportunity to present his version of the facts and his view of the law, so that the case may be tried on the merits." *Deaver v. Deaver,* 137 N. C., 240; *Cunningham v. Railroad,* 139 N. C., 427; *Wilson v. Cotton Mills,* 140 N. C., 52.

While the amended complaint makes separate, specific allegations of negligence as arising on the facts, we see no reason in the present case why these allegations should not be considered as evidential on the general charge of negligence; and we agree with his Honor below in holding that every phase of the controversy and every relevant fact and circumstance could be fully presented on the general issues addressed to that question.

Defendant assigns for error further, that the witness, Horton, was permitted to testify as an expert. The trial Judge, after hearing the evidence, found that the witness was an expert, and the authorities are to the effect that this action of the trial Judge is conclusive when there is evidence which tends to support such finding; and the evidence, we think, fully supports the conclusion reached by his Honor. *State v. Cole,* 94 N. C., 964; *State v. Wilcox,* 132 N. C., 1120.

Again, it is objected that the witness was permitted to testify that the pole where the injury occurred might have been given a different placing, so as to have enabled plain-

tiff, in performing his duties, to have avoided contact with the iron awning, the present placing of the pole near the iron awning being one of the features of negligence imputed to defendant, the objection being that this was not in the domain of expert testimony. But this position, we think, is not well taken. The witness was here speaking mainly of objective facts coming under his own observation; and in giving his statement to the jury that this pole could have been placed differently and this source of danger eliminated, he was simply giving to the jury a description of the attendant physical conditions. He was, in effect, describing the place. And, while expressed in the form of opinion, it was really, in this respect, the statement of a fact. *Gilleland v. Board of Education,* 141 N. C., 482.

Apart from this, the position of the pole in question and the placing of the drum upon it by means of which the electric lamp was raised and lowered involved to some extent the structure and operation of the appliance and method by which the electricity was to be conveyed to these lamps, and in that way was within his peculiar knowledge and training as an expert witness.

The principal objection urged for error by defendant was to the refusal of the Court below to dismiss the action as on judgment of nonsuit. And here, too, we think the ruling of his Honor was clearly correct.

It was proved that on 22 February, 1904, plaintiff, an employee of defendant company, while engaged in the performance of his duty in trimming the arc-light lamp at the corner of Front and Dock streets, in the city of Wilmington, received a severe electrical shock, causing serious bodily injuries.

There was also evidence tending to show that at this place a primary wire, "heavily charged with electricity for the

purpose of furnishing power to run a motor in the industrial plant of P. Cummings, was strung from poles under the arm from which was suspended the wires holding the arc-light lamp, and in such a way that in lowering and raising said lamp it would rub against this primary wire, by means of which the insulation upon said wires was rubbed off or burned off, or their condition and placing were such that contact between the electrical current on the primary wire and the wire controlling the said electric lamp was probable and very likely to occur; that the pole by means of which this arc light was suspended was placed so near an iron railing, which at the time supported an awning in front of Mr. Penny's store, and connected with the ground, and the drum or ratchet by which the said lamp was lowered and raised was so placed upon said pole that a right-handed person, in going up said pole for the purpose of raising and lowering said lamp, necessary for its trimming, would, in performing his duty in the usual and customary manner, naturally come in contact with said iron railing." That plaintiff had gone up the pole at the usual and proper place and was engaged in lowering the lamp by the revolving drum at the time he received the injury.

It was admitted, and there was also expert testimony on part of plaintiff to this effect, *that the shock was received* because the insulation of the primary wire and the wires which controlled the lamp having burned or rubbed off, and the wires having come in contact in lowering the lamp, the current from the primary wire was conveyed down a small cable wire connecting the wires controlling the lamp with the drum where plaintiff was working, and through plaintiff's body to the ground by way of the iron awning. And further, that without the awning the plaintiff would have received a shock, but not so severe as that which occurred.

If these facts are established, and they must be accepted as true in a motion to nonsuit, they make out a case of negligence on the part of defendant company.

"It is well established with us that an employer of labor is required, in the exercise of proper care, to provide for his employees a reasonably safe place to work and to supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in works of like kind and character; and an employer is also required to keep such machinery and appliances in such a condition, as far as this can be done in the exercise of proper care and diligence." *Hicks v. Manufacturing Co.*, 138 N. C., 319.

It is further an accepted principle that in the application and control of a dangerous agency like electricity the term "ordinary care" means the utmost degree of care in the construction, inspection and repair of their appliances, poles and wires.

As said by *Burwell, J.,* in *Haynes v. Gas Co.*, 114 N. C., 203: "The danger is great and the care and watchfulness must be commensurate with it."

Quoting further from that well-considered opinion: "Passengers on railroad trains have a right to expect and require the exercise by the carrier of the utmost care, so far as human skill and foresight can go, for the reason that a neglect of duty in such cases is likely to result in great bodily harm and sometimes death to those who are compelled to use that means of conveyance. 'As the result of the least negligence may be of so fatal a nature, the duty of vigilance on the part of the carrier requires the exercise of that amount of care and skill in order to prevent accidents.' Ray on Neg., p. 53.

"All the reasons that support the rigid enforcement of this rigid rule against the carrier of passengers by steam apply

with double force to those who are allowed to place above the streets of a city wires charged with a deadly current of electricity, or liable to become so charged. The requirement does not carry with it too heavy a burden."

Applying this standard of care to the facts indicated, we hold there was a clear breach of duty on the part of the defendant company in the conditions under which the plaintiff was required to do his work at the corner of Front and Dock streets in placing a primary wire, charged with a high and dangerous voltage, under the wires which held and controlled the electric lamp, in such a position that in raising and lowering the lamp the wires would come in contact, making it probable that the insulation would wear or burn away, and this, too, at a point where, in case the insulation should be worn or burned off, the plaintff, in doing his work in the ordinary and natural way, would likely come in contact with the iron awning, thus grounding the current and making serious or fatal injuries almost certain.

As heretofore stated, there was testimony on the part of plaintiff to the effect that the injury occurred just in the way that was probable from the conditions complained of.

It is most earnestly contended on part of defendant that the sole proximate cause of the injury was the unexpected sagging of a telephone wire at another point on the line at Front and Red Cross streets, which had been left in place above the defendant's system, and by which defendant's opposite primary wire was grounded, thus causing the shock; and that this was under circumstances which would render the occurrence an excusable accident. But the jury, under a proper charge, have rejected this theory and the evidence which tends to support it as the sole proximate cause of plaintiff's injury. They have accepted the theory that plaintiff's injury would not have

occurred but for the running of the heavily charged primary wire under the wires which controlled the electric lamp, in such a manner as to cause them to come in contact, and in placing the pole, where plaintiff was required to do his work, so near an iron awning that in doing this work in the ordinary and natural way he was very likely to come in contact with the iron awning, thus making a serious injury well-nigh certain in case the insulation of the wires should be destroyed. This condition was fraught with imminent and unnecessary peril, for there was evidence on part of plaintiff tending to show that the opposite primary wire was liable to ground at any time and in various ways. And this negligence having been established as the proximate cause of the injury, or one of them, it would not excuse the defendant, plaintiff himself being free from fault, that the opposing wire had, as a matter of fact, been grounded in a way that the company did not expect, or that it produced a greater injury than it had reason to anticipate. *Hudson v. Railroad,* 142 N. C., 198; *Drum v. Miller,* 135 N. C., 204.

The question of plaintiff's conduct was submitted to the jury on the issue as to contributory negligence and according to the principles expressed in the former opinion, and the plaintiff has been found free from blame. There was no error, therefore, in denying defendant's motion to nonsuit.

We have given the case and all the exceptions presented most careful consideration, and find no error which entitles defendant to a new trial.

Under a fair and comprehensive charge, the jury have accepted the plaintiff's version of the occurrence; and taking this to be true, the plaintiff has a clear right to recover. *Haynes v. Gas Co., supra; Houston v. Brush & Curtis,* 66 Vt., 331; *Chenall v. Brick Co.,* 117 Ga., 107; *Graham v. Badger,* 164 Mass., 42; *Electric Co. v. Sweet,* 57 N. J., 324.

No Error.