Argued March 19, reversed April 14, rehearing denied June 2, 1914.

## RUGENSTEIN v. OTTENHEIMER.

### (140 Pac. 747.)

**Witnesses—Recalling Witness—Discretion of Court.**

1. In an action for personal injuries, it was within the discretion of the trial court to permit plaintiff to be recalled and questioned if, in her testimony the day before, she attempted to be accurate in fixing distances on map, and if she was trying to change her evidence of the distances of which she had spoken; her answer being in the negative.

**Appeal and Error—Review—Questions of Fact—Qualifications of Expert Witness.**

2. It being the duty and within the province of the court as a preliminary question of fact to determine whether a witness is qualified as an expert, the appellate court will not disturb the decision, unless there is no evidence to sustain it.

[As to its resting on the trial court's discretion whether witness shall testify as expert, see note in Ann. Cas. 1912D, 817.]

**Evidence—Expert Testimony—Qualifications of Witness.**

3. That a physician is not regularly licensed to practice in the state does not militate against his competency as an expert witness.

[As to competency of physicians to testify as experts, see note in 66 Am. Dec. 234.]

**Evidence—Expert Testimony—Qualifications of Witness—Determination.**

4. That a witness has been licensed to practice medicine in another state, and is so engaged at the time of trial, is competent evidence in determining his fitness to testify as an expert, and to sustain a decision admitting his testimony.

**Trial—Reception of Evidence—Motions to Strike Out—Evidence Admissible in Part.**

5. Where several statements in the testimony of a physician were such as might properly be made by a nonexpert witness, a motion to strike out all his testimony on the ground that he was not qualified as an expert was properly denied.

**Evidence—Expert Testimony—Subject Matter.**

6. In an action for personal injuries, testimony of a physician that it is almost impossible for any physician to state just the extent of an injury from a shock, because it sometimes shows up 10 or 15 years afterward, that one cannot tell the extent or duration of it in the future, and that there are cases of shock from fright where the condition has become permanent, is admissible to show what suffering will accrue from the injuries in the future.

**Trial—Assessment—Instructions.**

7. Where the court charges that, when the jury have ascertained what plaintiff's injuries were, how much she will be compelled to

pay for doctors' bills, and what she has lost in wages, they may award such sum as they think will reasonably compensate her, and take the facts in the case, and do what is right between the parties, without regard to anything, except as conscience dictates, under the evidence and rules of law given them, the refusal of a charge that, before they are warranted in allowing any sum for permanent injuries, they must be reasonably certain, from a preponderance of the evidence, that the plaintiff has sustained permanent injury, and it is not enough that they may believe that a permanent injury is possible, is error, though the court gives the ordinary instructions about the party holding the affirmative of the issue being required to prove it by a preponderance of the evidence.

**Trial—Instructions—Prominence of Particular Matter.**

8.    In an action for injuries to a pedestrian by an automobile on the paved street of a large city, an instruction that it is admitted that plaintiff was crossing the street between crossings, and that it was her duty to exercise reasonable care, and to look and listen before crossing or attempting to cross to ascertain whether vehicles were approaching, and to exercise the care which any reasonable and prudent person would exercise in crossing the street between intersections, was properly refused, as it emphasized the circumstance that the crossing was not at the intersection of streets, which was immaterial where the streets were paved.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is an action by Albertine H. Rugenstein against Henry J. Ottenheimer to recover for a personal injury.

The substance of the plaintiff's grievance against the defendant is that on a day mentioned she was crossing Washington Street in the City of Portland at a point where there was no intersecting street, and that while she was thus walking a chauffeur in the employ of the defendant ran the latter's automobile against her, throwing her violently down upon the pavement, whereby she suffered injuries for which she would recover damages.

The ownership of the automobile and the employment of the chauffeur then in charge are admitted by the answer; but the other allegations of the complaint are traversed. The substance of the affirmative matter in the answer is that, although the defendant was

not personally present, yet his chauffeur was driving his automobile down Washington Street when the plaintiff, without stopping to look or listen for vehicles, undertook to cross the street where there was no sidewalk or crossing for pedestrians, and carelessly walked against the car so suddenly that it was impossible to bring it to a full stop at once, and that whatever injury she received was due to her own heedlessness.

The new matter in the answer was denied. From a verdict and judgment for the plaintiff in the sum of $3,500, the defendant appeals.        REVERSED.

For appellant there was a brief over the names of *Mr. A. H. McCurtain* and *Messrs. Bauer & Greene,* with oral arguments by *Mr. Thomas G. Greene* and *Mr. McCurtain.*

For respondent there was a brief over the name of *Messrs. Corliss & Skulason,* and an oral argument by *Mr. Guy C. H. Corliss.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The first error of which the defendant complains is predicated upon the court's permitting the plaintiff to be recalled and asked if, in her testimony the day before, she attempted to be accurate in fixing the distances on the map, and if she was trying by her declaration to change her evidence about the various distances of which she had spoken; her answer being in the negative. The objection goes to the weight of the testimony of the witness rather than to its competency. It was within the discretion of the court to allow her to return and explain what she meant by her former statement.

The bill of exceptions states that S. F. Grover was called as a witness for the plaintiff and testified that he was not engaged in the practice of medicine in Oregon; that he is a naturopath, and had not been licensed to practice medicine in Oregon; that he had been licensed to practice medicine in California in March, 1909, and had been practicing since then. He testified that he was called to attend the plaintiff professionally, and was asked the following question: "What condition did you find her in there, as to nervousness, pain, and other matters?" . The defendant objected to the testimony of the witness on the ground that he is not a regularly licensed physician to practice in this state. The objection was refused, and an exception is based on that ruling. The same witness was further asked this question: "Now, Doctor, just tell the jury what you saw there, as to the patient's condition, when you first called on her." With like result, the defendant objected to that question because the witness had not shown himself properly qualified as a physician.

2. It is the duty and within the province of the court as a preliminary question of fact to determine whether or not a witness is qualified as an expert, to the end that he may give an opinion in evidence, and the appellate courts will not disturb the decision of the *nisi prius* tribunal, unless there is no evidence to sustain the preliminary decision of that court: *Geer* v. *Durham Water Co.,* 127 N. C. 349 (37 S. E. 474); *Virginia I. C. & C. Co.* v. *Tomlinson,* 104 Va. 249 (51 S. E. 362): *American F. & F. Co.* v. *Settergren,* 130 Wis. 338 (110 N. W. 238); *Allen* v. *Durham Traction Co.,* 144 N. C. 288 (56 S. E. 942); *Horne* v. *Cons. Ry. L. & P. Co.,* 144 N. C. 375 (57 S. E. 19); *Municipal Court* v. *Kirby,* 28 R. I. 287, 13 Ann. Cas. 736 (67 Atl. 8); *Yates* v. *Garrett,* 19 Okl. 449 (92 Pac. 142); *Stillwell & Bierce Mfg.*

*Co.* v. *Phelps,* 130 U. S. 520 (32 L. Ed. 1035, 9 Sup. Ct. Rep. 601).

3, 4. The objection that the witness was not a physician regularly licensed to practice in this state does not militate against his competency as an expert. The only object of license is to prevent an unqualified person from practicing medicine and surgery; but a man may be ever so learned and well qualified to give an opinion, and yet not be engaged in practice. The fact that the witness had been licensed to practice medicine in California, and had been so engaged since then, was competent evidence for the consideration of the court in determining his fitness as an expert; and so the decision of the court as to the qualification of the witness must stand.

5. As disclosed by the bill of exceptions, the witness Grover gave several statements about the condition of the patient which are within common knowledge and observation, and might properly be related by a nonexpert witness, and hence the court very properly denied a motion to strike out all his testimony.

6. The defendant also assigns as error the action of the court in permitting the witness Grover to testify as follows:

"Q. Well, what I am getting at is, Doctor, there may be fright from a shock without any serious injury to the body, which will disturb the condition of the nervous system, and will last for some time; is that true?

"A. Well, it is almost impossible for any physician to be able to state just the extent of an injury from a shock, because it sometimes shows up 10 or 15 years afterwards, and disables a person in many other respects—it is impossible to tell accurately.

"Q. Can you tell the extent or duration of it in the future?

"A. No; you cannot.

"Q. Well, are there cases, Doctor, of shock that is from fright, where the condition had become permanent?

"A. Oh, yes, sir."

It is well settled that in personal injury cases the plaintiff may recover, not only for the pain and suffering already experienced, but also for what of suffering the preponderance of the testimony establishes will accrue from the injury in the future. To this end the opinion testimony of experts may be given as to what would be the result of the injury already experienced. The testimony of the witness Grover, just quoted, was admissible on that point. Its weight and credibility were questions for the jury, who were entitled to consider it for what it was worth. Reviewing the case of *Strohm* v. *New York, L. E. & W. R. R. Co.,* 96 N. Y. 305, cited by the defendant at the hearing of the case at bar, the New York Court of Appeals, in *Cross* v. *Syracuse,* 200 N. Y. 393 (94 N. E. 184, 21 Ann. Cas. 324), says:

"The reasonable certainty rule, therefore, laid down in the Strohm case applies only to the development of diseased conditions apprehended in the future, but not present at the time of the inquiry. There is no intimation in that case that opinion evidence is not properly receivable as to the probable effects or duration of an existing condition. There are many subsequent cases which show that this court did not intend to hold that expert testimony was inadmissible as to the consequences likely to flow from the present condition of an injured person."

7. The defendant complains, also, that the court was at fault in refusing to give the following instruction, which he requested: "Before you are warranted in allowing the plaintiff any sum by way of compensation for any alleged permanent injuries, if you should come

to the question of damages, you must be reasonably certain, from a preponderance of the evidence, that the plaintiff has sustained permanent injury and disability, and it is not enough that you may believe that a permanent injury is possible.''

In speaking of the measure of damages, the trial court said:

"And she is entitled to recover the damages which naturally flow from this accident. How much was she injured? How much pain and suffering has she endured? Are her injuries of a temporary or permanent kind? If they are a permanent kind, how much of a permanent kind are they, and what ought she to reasonably recover for the condition she was put in, through the negligence of this chauffeur—if you find he was negligent—and, in addition, she has stated that she was not able to work, that she has lost her wages, and that she will be compelled to pay doctors' bills, and so forth; if these are true, how much ought she to recover for all these things? And, when you have ascertained satisfactorily to yourselves what her injuries were, and how much she will be compelled to pay for doctors' bills, and what she has lost in the way of wages, by reason of this injury, then you may award her such a sum as you think will reasonably compensate her. * * Now, gentlemen, take the facts in this case—do what is right between the plaintiff and the defendant here, without regard to anything, except as your own conscience dictates it to you, under the evidence, and under the rules of law as I have given them to you.''

The amount of damages, like other elements of a personal injury case, is a fact to be established by the testimony. The determination of that question is not to be left to mere surmise or speculation. The verdict on that point should be the result of a careful consideration and comparison of all the evidence in the case. Instead of permitting them to give what they thought,

the court should have told the jury to allow for damages if anything, the amount established by a preponderance of the evidence. As stated by Mr. Justice BROWN in *Galveston etc. Ry. Co.* v. *Powers,* 101 Tex. 161, 164 (105 S. W. 491, 493):

"Neither expert witnesses nor the jurors may be turned loose in the domain of conjecture as to what may by possibility ensue from a given statement of facts. The witness must be confined to those which are reasonably probable, and the verdict must be based upon evidence that shows with reasonable probability that the injury will produce a given effect."

True enough the court, in the concluding clause of the excerpt from its instruction above noted, told the jury that their conclusions must be reached "under the rules of law as I have given them to you." In the same breath the judge told them to act without regard to anything, except as their own consciences dictated it to them, and earlier in the charge he laid down as a rule of law that the jury might award plaintiff such a sum as they thought would reasonably compensate her. Under all these circumstances the defendant was entitled to the instruction requested against rendering a verdict on the mere possibility that the injury might prove permanent. "That an injury may possibly result in permanent disability will not warrant the assessment of damages for a possible disability, unless it is also reasonably certain to follow": *Ohio & Miss. Ry. Co.* v. *Cosby,* 107 Ind. 32, 36 (7 N. E. 373, 375). The following citations illustrate the same principle: *Atlanta & W. R. R. Co.* v. *Johnson,* 66 Ga. 259; *Fry* v. *Dubuque etc. Ry.,* 45 Iowa, 416; *Curtis* v. *Rochester etc. Ry.,* 18 N. Y. 534 (75 Am. Dec. 258); *Dawson* v. *Troy,* 49 Hun, 322 (2 N. Y. Supp. 137); *Raymond* v. *Keseburg,* 91 Wis. 191 (64 N. W. 861); *Smith* v. *Mil-*

*waukee B. & T. Exch.*, 91 Wis. 360 (64 N. W. 1041, 51
Am. St. Rep. 912, 30 L. R. A. 504); *Kucera v. Merrill
Lbr. Co.*, 91 Wis. 637 (65 N. W. 374); *Savage v. Third
Ave. R. Co.*, 25 Misc. Rep. 426 (54 N. Y. Supp. 932);
*Hall v. Cedar Rapids etc. Ry.*, 115 Iowa, 18 (87 N. W.
739); *Galveston etc. Ry. v. Powers*, 101 Tex. 161 (105
S. W. 491, 493); *Ongaro v. Twohy*, 49 Wash. 93 (94
Pac. 916); *Johnson v. Connecticut Co.*, 85 Conn. 438
(83 Atl. 530). On this point this court, speaking by
Mr. Justice Moore, in *Patty v. Salem Flouring Mills
Co.*, 53 Or. 350, 357 (98 Pac. 521), lays down the rule
thus:

"The degree of proof required of a plaintiff, who, in
order to obtain a favorable judgment, must sustain the
material issues involved, is generally classed as a
probability. If, when he rests his case, the facts which
were incumbent upon him to establish appear from
the evidence as merely possible, the court, upon motion
of the adverse party, should grant a judgment of non-
suit for failure to prove a material issue. When, how-
ever, after the plaintiff rests his case, it appears from
his evidence that the facts devolving upon him to make
manifest are quite probable, his cause has passed the
danger point of a nonsuit and, together with the de-
fendant's evidence, if offered, should be submitted to
the jury for them to determine the credibility of the
witnesses and the weight of the testimony by compar-
ing and considering the balancing probabilities."

True enough the court, in the present case, gave the
ordinary instructions about the party holding the af-
firmative of the issue being required to prove it by a
preponderance of the evidence; but this is not by the
mark. The measure of proof thus correctly declared
is one thing, and what is to be proven is quite another.
In the very nature of affairs permanency of injury,
future suffering, and the like are problematical and
speculative in most cases other than those where loss

of bodily members is involved.   Hence the rule is that at least a probability of such elements of damage must be shown to exist.   To show a mere possibility is but a failure of proof.   In other words, the necessary probability of future suffering may be proven by a preponderance of the evidence; but it is not enough to disclose a mere possibility by that measure of proof or any other.   That would be carrying speculation too far into the realm of uncertainty.

8. Error is assigned on the refusal of the following instruction requested by the defendant, which is a fair sample of several others he offered on the same subject: ''You are further instructed that it is admitted in this case on the part of the plaintiff that she was crossing Washington Street in the City of Portland at the time of this accident between Nineteenth Street and Trinity Place, or between street crossings, and that it was the duty of the plaintiff under such circumstances to exercise reasonable care and to look 'and listen before crossing or attempting to cross said street in order that she might ascertain whether vehicles were approaching, and that it was the duty of the plaintiff when crossing the street at said point to exercise the care which any reasonable and prudent person would exercise in crossing the street between intersections.''

It is not believed that in these modern days of paved streets a lesser degree of care obtains between street intersections than ought to be observed where streets cross each other.   The rule might have been different in reason when streets were spanned at intervals by crosswalks leaving the remainder of the highway impassable for pedestrians so that footmen ordinarily would not be expected to cross at any place but the crosswalk.   The rule fails with the failure of the reason where streets are paved so that pedestrians

may be expected as of right to use any portion of the thoroughfare. True enough that, while pedestrians have a preference on sidewalks, still they have at least equal rights with vehicles in crossing or traveling upon other parts of the street. It is a duty, both of pedestrians and those in charge of vehicles, to look and listen and otherwise exercise reasonable prudence in observing the approach of each other so as to avoid collisions, and this rule is appropriate at all points of the street. Of course the concrete application of the rule must depend upon the circumstances. A greater degree of absolute care is required on a crowded thoroughfare than on the comparatively vacant street of a small country town; but the principle is that in all cases reasonable care commensurate with the risk must be exercised by those who are likely to be affected by the movements of others. The instruction requested was well enough in respect to requiring the plaintiff to look and listen; but it is open to criticism in undertaking to emphasize the circumstance that the crossing was not at an intersection of streets. While the rule announced by the court might have been stated in greater detail, it is believed that the law was substantially stated by the language of the charge:

"Now, a person is bound to exercise all of their faculties, and to do those things which the ordinarily prudent person would do—they are required to exercise that reasonable care which an ordinarily prudent person would exercise under the existing circumstances, having in view the probable danger which might come to them, and that is what she was required to do, in crossing that street."

For the reasons above given, however, the judgment is reversed for further proceedings.

REVERSED AND REMANDED.

MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.

MR. JUSTICE BEAN delivered the following dissenting opinion:

I am unable to concur in that part of the foregoing opinion upon which the reversal is based relating to a refusal of the court to give the following instruction:

"Before you are warranted in allowing the plaintiff any sum by way of compensation for any alleged permanent injuries, if you should come to the question of damages, you must be reasonably certain, from a preponderance of the evidence, that the plaintiff has sustained permanent injury and disability, and it is not enough that you may believe that a permanent injury is possible."

In my opinion this requested instruction was fully covered by the charge given by the court, although not in the exact language, and precluded the jury from finding upon any issue on a mere possibility.

The court gave the following instruction, among others (see page 176 et seq. of Transcript):

"Now, I have said to you that the burden of proof is upon the plaintiff to satisfy you by a preponderance, or outweighing of the testimony, that the chauffeur, Albert J. Maxson, was negligent, and that that negligence was the proximate cause of the injury which came to her, and that damages resulted therefrom, and the amount of damages, all of these matters, she must establish to your satisfaction by a preponderance or outweighing of the testimony. * * With the exception of contributory negligence which Mr. Ottenheimer has alleged in his answer, all other matters in this case, the burden of proof is upon Miss Rugenstein. Now, you may ask yourselves, 'What is meant by the term "preponderance of proof," and in legal contemplation, whenever a person makes a statement, he has got to prove it, and how does he prove it?' Well, he has to prove it by testimony—by a preponderance or outweighing of the testimony—he has to prove it by testimony which weighs the more according to the

scale of probability, that what he says is more satisfactory to you, more probable, than the other side. We don't argue for demonstration—that is not possible in the affairs of human mundane, but we do argue that there shall be a preponderance, and we sometimes use a symbol; * * you may liken the weighing of testimony to an apothecary's scale, one side representing the plaintiff, and the other side representing the defendant. * * "

I think the instruction given fully covered the instruction requested, and that the charge could not have been misunderstood by the jury. For that reason, I think the judgment should not be reversed.