HOUSE COLD TIRE SETTER COMPANY v. W. E. WHITEHURST.

(Filed 14 October, 1908.)

**Vendor and Vendee—Contracts—Breach of Warranty—"Opinion
Evidence."**

In an action to recover the purchase price of a machine, the
defense being a breach of warranty, it was competent for wit-
nesses to testify as to their opinion on the question whether the
machine was fitted for the work it was guaranteed to do, when
the witnesses were qualified by training and experience to ex-
press an opinion that would aid the jury to a correct conclusion,
and where this training and experience was acquired by the use
and operation of machines of like kind and make, identical in
principle, structure and operation; and though the witnesses had
not had personal observation of the very machine which was the
immediate subject of inquiry.

ACTION heard on appeal from a justice's court, before
*Lyon, J.,* and a jury, at April Term, 1908, of EDGECOMBE.

Verdict and judgment for defendant, and plaintiff ex-
cepted and appealed.

*Paul Jones* and *W. O. Howard* for plaintiff.
No counsel *contra.*

HOKE, J. This was an action to recover on certain notes
given by defendant to plaintiff for the purchase price of one

or more "cold tire setter" machines bought by defendant of plaintiff, the manufacturer, through its agents, the Fulford Hardware Company, of Washington, N. C. It does not distinctly appear from the record whether there were one or more of these machines or whether they were No. 1 or No. 2; nor does this seem to be a matter of importance. Defendant answered by way of defense that the notes sued on were given by him for the purchase price of a certain "cold. tire setter" machine manufactured by plaintiff and sold to defendant with a warranty that it would do work of a certain kind and quality, and that on trial it was found totally unfitted for the work it was guaranteed to do, and the question of defendant's liability was made to depend on whether there had been a breach of the warranty, as stated.

There was evidence offered by defendant in support of his allegations, and that plaintiff manufactured machines known as "cold tire setters" Nos. 1 and 2, and that the Fulford Hardware Company, of Washington, N. C., was plaintiff's agent for the sale of the machines, from whom defendant purchased one or more of the machines in question; and, in support of his contention that the machine would not do the work it was guaranteed to do, defendant was allowed to introduce, over plaintiff's objection, the evidence of J. H. Corey and Robert Greene, as follows:

J. H. Corey: "Some four or five years ago I bought a House cold tire setter, No. 2, of the House Cold Tire Setter Company, of St. Louis, Mo., through the Fulford Hardware Company, of Washington, N. C., that would not do the work it was manufactured to do at all satisfactorily. I gave it a full and fair trial and had several mechanics endeavor to operate it, but they were unable to do so with any degree of success. In using this machine it would dish and bend the spokes in certain parts of the wheel more than in others, and would crimp the tire instead of taking up the slack, and the grip of the machine, which was to hold the tire while

pressure was applied, would not hold it. We could not operate it, and discontinued its use."

Robert Greene: "I am a buggy manufacturer and have been for twenty-five or thirty years; am familiar with both No. 1 and No. 2 House cold tire setter machines; same kind and make of machine in controversy. Both machines are alike in construction and in all respects, except that one is larger than the other. The principle in both machines is identical. I had a No. 1 House cold tire setter machine manufactured by plaintiff. It would not work; it would not 'take up,' but would crimp the iron. I tried it two years and then threw it away. The Fulford Hardware Company, of Washington, N. C., was agent of the plaintiff."

We think the court below made a correct ruling in admitting the testimony of these witnesses. Both of them seem to have testified as experts, and the witness Greene fully qualified himself as such; but, whether they were so examined or not, both of them showed that by training and special opportunity to note and observe relevant facts they were qualified to give an opinion on the matter in question that was calculated to aid the jury to a correct conclusion. Such testimony has a recognized place in the law of evidence. McKelvey on Evidence, pp. 230-235; Lawson on Expert and Opinion Evidence, 503. This last author speaks of it as "opinion evidence from necessity," and on page 515 mentions machinery as one of the subjects which especially permit the reception of this kind of testimony, citing the cases of *McCormic Co. v. Cochrane,* 64 Mich., 636, and *Levers v. Box Co.,* 50 N. E., 877, the former being a case not unlike the one we are now discussing. True, it is usually required for the reception of such testimony, not in strictness expert evidence, that the witness should have observed the very machine or implement which is the subject-matter of dispute; and the witness Greene seems to have done this, for he speaks as one having knowledge of this machine from

personal observation. But we do not think the requirement in any event should be held to exclude this testimony, when the witness speaks as to the operation of a machine of like kind and make, and there is no question or dispute but that they are all made by the same company and on the same plan, identical in "principle, structure and operation." In such case, and certainly where there is no .claim that the machines are different, while the witness in terms refers to the machine he actually tried, this is only by way of illustration and in support of his opinion; and his testimony, as a matter of fact, bears on the machine in dispute and is directly relevant to the issue.

We are of opinion that no reversible error appears in the record, and the judgment in favor of defendant should be affirmed.

No Error.