N. H. MONDS, Administrator, v. TOWN OF DUNN.

(Filed 24 September, 1913.)

1. **Cities and Towns—Negligence—Defects—Actual Notice.**

In an action to recover damages against a town for the negligent killing of plaintiff's intestate by a defective condition of its electric apparatus for lighting the streets, evidence that previous notice had been given to one of its street laborers is incompetent to fix the town with direct knowledge of the defect.

2. **Evidence—Witnesses—Opinions—Experience and Observation.**

The plaintiff seeks to recover damages for the negligent killing of his intestate by an electric current passing from a wire carrying a heavy voltage of electricity through a transformer to an electric lamp, with a lessened current, claiming that the injury complained of was received through other wires used in manipulating the lamps. Testimony of a nonexpert witness, who had been employed by the defendant for several years was competent, that the voltage on the secondary wire from the transformer to the lamp, from his personal knowledge and experience, carried a voltage of 110, which was not dangerous; and that several days prior to the occurrence he examined the light and pole, and that the day afterwards, as soon as it could have been done, he examined the transformer, and they were all right.

3. **Harmless Error—Evidence.**

The exclusion of competent testimony is cured by the subsequent admission of testimony of the same witness upon the same subject.

**4. Evidence, Opinion—Relevancy.**

Where a witness has not qualified as an expert electrical engineer, his explanation of "the latest improved method of suspending arc lights" is incompetent, especially when such methods are not relevant to the inquiry.

**5. Evidence, Expert—Hypothetical Questions.**

A hypothetical question asked an expert, not based upon the evidence in the case, is properly excluded.

**6. Instructions — Negligence—Contributory Negligence—Proximate Cause.**

*Semble,* in this action to recover of the defendant damages for the death of plaintiff's intestate, alleged negligently to have been caused by certain defects in regard to its wiring and arrangement for manipulating its arc lamp, the evidence was insufficient to carry the case to the jury; but if otherwise, the charge of the court upon the rule of the prudent man, contributory negligence, and proximate cause, is approved.

APPEAL by plaintiff from *Carter, J.,* at May Term, 1913, of HARNETT.

*E. F. Young and R. L. Godwin for plaintiff.*
*Clifford & Townsend for defendant.*

CLARK, C. J.. The plaintiff's intestate was found dead near a street crossing in the town of Dunn on a rainy night in December, his head and body submerged to the waist in the water in a ditch 4 feet deep, his feet and legs being on the bank. His feet were near an electric light post which was on the edge of the street, across the ditch from the sidewalk. On the pole were the electric light wires of the defendant town, which were owned by the town. An arc light was suspended over the center of the street crossing, about 35 feet from where the body was found. There was a chain connected therewith by means of which the lamp was lowered and raised. This chain was out of the reach of persons passing along the street, and the witness Freeman, who was 6 feet tall, had to reach up to get it.

Late in the afternoon before the body was found the lamp was suspended in its place as usual. At the time the body was found, about 9 o'clock at night, the lamp was lying on the ground in

the middle of the street. One of the secondary wires which it was testified carried a voltage of 110 was found detached therefrom.

This action is brought to recover damages for the alleged negligent killing of the plaintiff's intestate, alleged to have been caused by the defendant's electric wires which were found down on the street as above set forth.

Upon this evidence the court might well have directed a nonsuit. There was slight, if any, evidence, beyond mere conjecture, that the death of the intestate was caused by coming in contact with the wire, 35 feet off, or that there was any negligence of the defendant which caused the contact, if any had been shown. He was not found in contact with the wire, but 35 feet away.

The first exception is to the exclusion of the evidence of the witness, Lynch, who testified that a short time prior to the death of the deceased he told one Freeman that he had received a shock there on the Monday previous. Freeman having later testified that he was hired by the day by the town to trim lamps and do other work by the superintendent employed by the city, the court directed the jury: "You will not consider any evidence to the effect that P. Y. Lynch gave any notice to Mr. Freeman." It cannot be that a remark to a day laborer was notice to the town. Such evidence is only competent as actual notice to the town when it is given to an officer whose duty and interest it is to inform the town authorities, or who has authority himself to act in the matter. A notice to a day laborer on the street of New York or London that there is a defect in the pavement certainly could not be construed as fixing the town with liability by reason of such notice. The same rule of law applies to the town of Dunn. It might be that the town should have taken notice of the defect, if there was one. But certainly it was not competent to show that it had actual notice by reason of a remark made to a day laborer, employed by the town. 28 Cyc., 1397-99.

The witness further testified that on Sunday night before the plaintiff's intestate was killed he crossed at that place, and the lamp was not giving any light. He thought he would shake it,

MONDS *v.* DUNN.

and reached up high to shake it, and when he did, got a considerable shock. He did not tell any of the town commissioners about it, that he remembers. The shock gave him a peculiar feeling. This evidence was stricken out by the judge at the conclusion of the testimony, there being nothing to show that the wire was any lower on Thursday night or connecting the intestate in any way with being struck by reason thereof. According to Lynch's testimony, the wire was out of his way and he received the shock only because he, a very tall man, reached up and grasped the light.

Bizzell, the city superintendent of the defendant's light and water department, testified that the lamp was suspended in the middle of the street by a cable. He said that while the voltage on the primary wire was 2,300, the voltage on the secondary wire from the transformer to the lamp was 110, and that such voltage was not dangerous and would not give much of a shock; that he had received a shock from a 110-volt current, and it was not much of a shock. The plaintiff excepted because the witness was allowed to testify that 110 volts was not considered a deadly current. But the witness stated that he spoke on his own experience. The plaintiff also excepted because Bizzell testified that the primary wire did not come in contact with the secondary wires, but was above them; that he did not notice the wire on that day, but did so on the next day. This witness further testified that the dead man had not been moved when he got there; that there were no wires about his feet; that he inspected this light and pole two or three days prior to the time; and he also examined the transformer on that pole the next day, which was as soon as it could be done, and found them all right. The plaintiff excepted to this testimony. The witness stated that he had not taken any course in electricity and did not profess to be an expert, and all the experience he had had was being in charge of the electric light business of this town for two or three years past. We do not see any error in admitting the testimony, which was a matter of observation on the part of the witness, who was in charge of the business and had been for two or three years past. There was other evidence that there were no wires found in contact with the body of the deceased, and none to the

contrary; that the light in question was hanging in its usual position late in the afternoon before the body of the deceased was found that night. In the reply there was testimony tending to show that the plaintiff's right hand was burned on the inside as if he had taken hold of something, and that there was a blister.

C. W. Thompson, witness for the plaintiff, testified that he was an electrician, but he had not examined the entire line of poles from the crossing where the body was found to the power plant; that he had been over a part of the line. He was asked how much voltage do these wires carry to the arc light as described by Mr. Bizzell in his testimony, and how much voltage would it take to operate an arc light as described by Bizzell and as they are usually suspended. This evidence was excluded, and the plaintiff excepted. But the witness was allowed further to testify that he could form an opinion satisfactory to himself as to how much voltage it would take to operate such an arc light as was described by Mr. Bizzell; that in his opinion it would take 1,100, though it could be operated on 110-volt current if a rheostat was cut in on one side; that he had never known a street arc light operated on 110-volt current; that if the primary current is 2,300 volts, it would be an exceptional transformer that would cut it down to 110 at one step, but it could be cut down to 1,100.

If there had been error in excluding the previous questions to Mr. Thompson, it was fully cured by the admission of this testimony by him.

The court excluded a request by the plaintiff to Mr. Thompson to explain to the jury the "latest improved method" of suspending arc lights. In this we do not see any error. *Witsell v. R. R.*, 120 N. C., 557. The witness further stated that he had not taken any course in a technical school nor college, and his experience was mainly acquired by work at the business. It would seem that his qualifications as expert were about the same as those of Mr. Bizzell. This witness was further asked: "If the insulation on the primary wire had been defective and the light had been out of proper care, would it not have caused a larger

voltage?" There was no evidence that the insulation on the primary wire was defective, and the hypothetical question was properly excluded.

The court charged the jury that the plaintiff was required to show by the greater weight of evidence that there was a failure to exercise proper care in the performance of legal duties which the defendant owed to the plaintiff, *i. e.*, that degree of care which a reasonably prudent man should use under like circumstances, and that such negligent breach of duty was the proximate cause of the injury (explaining correctly what was "proximate cause"), and that persons in control of electric appliances are charged with a continuous duty of taking reasonable precaution to keep their appliances in proper condition. This is substantially the charge approved in *Ramsbottom v. R. R.*, 138 N. C., 38. If the plaintiff desired more specific instructions, he should have asked for them. *Simmons v. Davenport*, 140 N. C., 407. Besides, the plaintiff could not have been prejudiced, as there was no evidence whatever showing negligence of the defendant which would have brought the wire to the ground, or in reach of the intestate, nor that the wire hung lower than was safe or usual.

The court further charged the jury: "The defendant contends that there is such an extent of mystery introduced in the case by evidence tending to show a burn in both hands and foot, that upon all the evidence they should not be convinced that the death of the plaintiff's intestate was caused from wires being down in the first instance, but rather that the plaintiff's intestate himself brought the wire down." After stating this contention, the court added: "Of course, it is hardly necessary for me to tell you that if the plaintiff's intestate came to his death by meddling with the chain, and then received the shock from the wires which he had himself brought down, he would not be entitled to recover, and upon such finding of fact it would be your duty to answer the first issue 'No.'" The plaintiff excepted to the above instructions, but we find no error.

The whole charge is not sent up, and it does not appear that there were any instructions asked and refused. Upon the whole case, we find no error entitling the plaintiff to a new trial.

There was no evidence tending to show that the wires were down by any negligence of the defendant. Indeed, the evidence was scarcely sufficient to justify submitting the case to the jury. They have, however, found the issue in favor of the defendant.

No error.