BROWN, J., dissenting.
Action to recover damages for personal injury caused, as the plaintiff alleges, by the negligence of the defendant.
The original complaint is as follows:
1. That he is, and at the times hereinafter mentioned was, a resident of Wake County, North Carolina.
2. That the defendant is, and at the times hereinafter mentioned was, a corporation existing and doing business under the laws of the State *Page 180 
of North Carolina, and was operating a line of railroad in the State of North Carolina and in the State of Virginia, and elsewhere.
3. That on 14 January, 1912, the plaintiff was in the employment of the defendant, and in the discharge of the duties of his said employment it became and was proper and necessary for the plaintiff to traverse a certain piece of ground beside the railroad track of the defendant and within its right of way at or near the station known as Cochran, Va., and to do so hurriedly in order to get abroad a train of cars then and there being operated by the defendant; that at the said time it was snowing and the ground had become and was covered and hidden by snow; that the defendant had carelessly and negligently caused, permitted and allowed water to be poured or spilled upon the ground at said place and to become frozen, thereby covering the ground for a considerable space with a sheet of ice, and the defendant had negligently permitted and allowed the said ice to be and remain upon the ground at the said place, and to become and be covered and hidden by (132) the snow, and had thereby negligently caused a highly dangerous condition to exist, and the said place and condition was highly dangerous and perilous and the defendant in the particulars aforesaid, the plaintiff, while proceeding along the said ground in the exercise of ordinary prudence and care, and without notice, knowledge or information or warning of any kind of the existence of said danger, was caused to slip and fall heavily upon the ground, and thereby his collar bone and other bones were injured and dislocated, and he was bruised and wrenched and strained and sprained, and he was caused to suffer other serious, painful, dangerous and permanent injuries to the muscles, bones, nerves and ligaments of his body, head and extremities, and caused to suffer much pain and anguish of body and mind.
4. That on account of the negligence of the defendant as aforesaid, the plaintiff has been damaged in the sum of ten thousand dollars ($10,000).
Wherefore, the plaintiff prays judgment that he recover of the defendant the sum of ten thousand dollars damages, and the cost of this action, and that he have such other relief as may be proper.
The plaintiff offered evidence tending to prove: That he was a resident of the city of Raleigh, N.C. and in the employment of the defendant as repairer of its pumps between Raleigh, N.C. and Richmond, Va., and in the course of his employment was ordered by the defendant to go, as he did, from Raleigh, N.C. to Cochran, Va., to repair one of the pumps used by the defendant in connection with its line of railroad from Raleigh to Richmond; that he arrived at Cochran after *Page 181 
dark; that the station building there is on the west side of the track; that across the track to the east there is a water tank which was used to supply water to engines of the defendant operating between Richmond and Raleigh; that the ground upon which the foundation of the tank is built is a couple of feet or more lower than the track; that southwardly from the tank is a tool-house which is about . . . feet from the tank, and about . . . feet northwardly from the tank and located in a depression is the pump-house; that water was pumped from the pool beside the pump up to the tank; that the railroad beside the pump-house was on a fill some . . . feet high; that there was a path or way leading directly down from the track to the pump-house, but this was quite steep; that there was another path leading from the pump-house southwardly, parallel with railroad track and up the incline and around behind the tank, then between it and the tool-house and up to the railroad track and across to the station; that this was the usual path used by pedestrians in going back and forth between the station (133) grounds and the pump, and the plaintiff was in this path when he fell; that upon his arrival that night the plaintiff left the train on the western side, went around the engine and down to the pump; that he then discovered that, to make the repair, he would need a four-inch flange union, and he recalled the campany [company] had one at Skelton, Va.; that a work train of the defendant was standing on the track beside the station and about to leave (southbound) for Skelton, Va., and Norlina, N.C.; that the plaintiff, in company with the pumper, Lewis, and the section foreman, Parks, in charge of that section, left the pump-house for that purpose of boarding the train and going for said flange union; that the pumper led the way, carrying in his hand a lighted lantern, the plaintiff following a few steps behind the plaintiff; that they traversed the above mentioned usual path and were still in the same and within a few feet of the railroad track when the plaintiff fell; that the path up to that point had been rough; that the weather had been cold for some time and there had been snow on the ground, which had partly melted during the days and froze again during the nights after being tracked, and hence was roughened; that during the day of the night on which plaintiff's injury occurred the defendant's pumper had unnecessarily allowed the pump to run long after the tank was filled with water and caused the tank to overflow for several hours, and this water which had overflowed for several hours, and this water which had overflowed had spread and frozen upon the ground and pathway at the place where the plaintiff fell, leaving a smooth slick surface, dangerous for the use of pedestrians; that snow had been falling for an hour or two before plaintiff's fall, and this had covered the smooth ice, and plaintiff could *Page 182 
not see it, and knew nothing of the presence of the ice; that he did not know it was there and could not discover it by the use of his sight, and that he had never seen ice there before; that the defendant had never permitted the formation and accumulation of ice there before; that he was walking in a careful manner, watching his footsteps by the aid of the lantern in front of him; that neither the pumper nor the section foreman, Parks, had in any way warned him of the condition of said pathway, and that Parks knew it existed, as he had been present at the station all during the day and had seen the water overflowing for a long time and freezing, as aforesaid; that Parks had there present all during the day a section force of eight men and only three of them had been occupied during the day, and the work train had been at that station for several hours with its crew of hands, and none of them had removed the ice or roughened it, or placed any substance upon it to make the footing safe, or placed any substance upon it to (134) path for approaching the train from that side of the station; that the plaintiff slipped on the ice and fell and was seriously injured.
The plaintiff introduced a witness by the name of Parks who was present at the time the plaintiff was injured and testified as to the condition of the ground, of the weather and to other circumstances, including that of the tank running over. He was asked the question, "Why was the tank running over?" and he replied, "Because the pumper was neglecting his duty and let it continue to run after the tank was full," and the defendant excepted.
At the conclusion of the evidence the defendant moved for judgment of nonsuit upon the following grounds:
1. That the evidence disclosed a right of action under the Federal Employers' Liability Act and that the complaint did not state a cause of action under this statute.
2. That there was no evidence of negligence.
The plaintiff contended that the complaint was sufficient and stated a cause of action under the Federal act, but asked leave to amend by alleging that the plaintiff was employed in interstate commerce at the time of his injury. The defendant objected to the amendment, as it appeared that it was asked for more than two years after the injury occurred. The amendment was allowed and the defendant excepted.
His Honor then overruled the motion for judgment of nonsuit and the defendant excepted. The defendant then filed an answer pleading the statute of limitations and assumption of risks as defenses.
The defendant requested his Honor, in apt time and in writing, to charge the jury, if they believed the evidence, to answer the issue as to *Page 183 
the assumption of risk in the affirmative. This was refused and the defendant excepted.
His Honor also instructed the jury to answer the issue as to the the employer is not a guarantor of the safety of the place of work of of the machinery and appliances of the work to be done by the employee. (The extent of its duty to its employee is to see that ordinary care and prudence are exercised to the end that the place in which the work is to be performed may be safe for the workmen.) To the foregoing charge in parenthesis defendant excepted.
His Honor also instructed the jury to answer the issue as to the statute of limitations in the negative, and the defendant excepted.
The jury returned the following verdict:
1. Was the plaintiff injured by the negligence of the defendant? Answer: Yes.
2. Did the plaintiff assume the risk of injury? Answer: No.
3. Did the plaintiff, by his own negligence, contribute to his injury? Answer: No.
4. What damage, if any, is plaintiff entitled to recover? (135) Answer: $3,500.
5. At the time alleged in the complaint, was the defendant engaged in interstate commerce, and was the plaintiff employed by the defendant in such commerce? Answer: Yes.
6. Did the plaintiff's cause of action accrue more than two years before the amendment to his complaint was filed? Answer: No.
Judgment was entered upon the verdict in favor of the plaintiff and the defendant appealed.
It is admitted that the defendant is a common carrier engaged in interstate commerce and that the plaintiff was employed in such commerce at the time of his injury. It was therefore necessary and essential to allege a cause of action under the Employers' Liability Act, because the Federal statute is exclusive and supersedes the right of action under the State Law. Mondou v. R. R., 223 U.S. 1; R. R. v. Wulf, 226 U.S. 570; and R.R. Co. v. Hayes, 234 U.S. 86.
In the last case the Court says, "Had the injury occurred in interstate commerce, as was alleged, the Federal act undoubtedly would have been controlling, and a recovery could not have been had under the common or statute law of the State; in other words, the Federal act would have been exclusive in its operation, not merely cumulative"; citing for this position, among others, the Mondou case, which *Page 184 
says of the Employers' Liability Act: "And now that Congress has acted, the laws of the States, in so far as they cover the same field, are superseded."
We must then examine the original complaint for the purpose of seeing if it alleges a cause of action under the Federal act, and, if not, must inquire into the power of the court to allow the amendment.
This presents a question of pleading and practice under the laws of this State, as the Supreme Court of the United States has said in Brinkmeier v.R. R., 224 U.S. 268, in reference to an assignment of error on account of an amendment to a pleading: "Error is assigned upon this ruling; but as it involved only a question of pleading and practice under the laws of the State it is not subject to review by us," and there are many other cases to the same effect.
When we turn to our statutes we find it is provided by section 515 of the Revisal that "No variance between a pleading and the proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action upon the merits," (136) and by section 495, that "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties."
These statutes were considered in Blackmore v. Winders, 144 N.C. 215, and it was there held, with reference to a pleading, that "If it can be seen from its general scope that a party has a cause of action or defense, though imperfectly alleged, the fact that it has not been stated with technical accuracy or precision will not be so taken against him as to deprive him of it. If in any portion of it, or to any extent, it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, however inartificially it may have been drawn or however uncertain, defective, or redundant may be its statements, for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader," and this was approved in Brewer v. Wynne,154 N.C. 467.
If this rule of construction is applied to the original complaint and it is construed in the liberal spirit contemplated by the Code, it alleges a cause of action under the Federal statute.
It must be kept in mind that the plaintiff was employed in interstate commerce at the time of his injury by an interstate carrier, and that he had no cause of action except under the Federal statute, because, as we have seen, it had the effect of superseding the State laws.
The original complaint alleges that the plaintiff was injured by the negligence of the defendant and that this caused him damage, which *Page 185 
he prays the court to award him. He could not be entitled to recover damages except under the Federal statute. He alleges further that the defendant was operating a line of railway in the States of North Carolina and Virginia, and this made it an interstate carrier. There is no reference in the complaint to the fact that the defendant did an interstate business. The plaintiff alleges further that he was in the employment of the defendant, presumably in the interstate business which the defendant was conducting. He says further that he was in the discharge of the duties of his said employment at the time of his injury and that he lived in Wake County, N.C. and was injured in Cochran, Va.
As there is no reference to intrastate business in the complaint, and it is alleged that the defendant was doing an interstate business, that he was injured while in the discharge of his employment, is not the inference permissible and reasonable that he was employed in interstate business and was injured in the discharge of his duties in that employment? If, however, the original complaint does not allege an cause of action under the Federal act, we are of opinion that the court had the power to permit it to be amended by alleging that the defendant (137) was employed in interstate commerce at the time of his injury.
We must again have recourse to our own statutes and decisions, and we find that "Any pleading may be once amended of course, without cost and without prejudice to the proceedings already had, at any time before the period for answering it expires; or it can be so amended at any time, unless it be made to appear to the court that it was done for the purpose of delay, and the plaintiff or defendant will thereby lose the benefit of the term for which the cause may be or is docketed for trial" (Rev., sec. 505), and that "The judge or court may, before and after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case."
Rev., sec. 507. (Italics ours).
These sections of the Revisal have been very fully considered in Ladd v.Ladd. 121 N.C. 118; Lassiter v. R. R., 136 N.C. 93; Bank v. Duffy,156 N.C. 87, and in other cases, and the distinction is drawn between adefective statement of a cause of action which may be amended and the statement of a defective cause of action which cannot be amended.
In the Lassiter case the Court says: "The difference between a defective statement of a good cause of action which can be amended by inserting other material allegations and a statement of a defective *Page 186 
cause of action is that the latter cannot be made a good cause by adding other allegations."
If this is a correct statement of the law, it is conclusive upon the power of the court to amend the complaint by allowing an additional allegation to be made, as the original complaint with the amendment admittedly states a good cause of action under the Federal statute. R. R.v. Wulf, 226 U.S. 570, seems to be decisive of the right to amend. In that case Sallie C. Wulf commenced an action in the Circuit Court of the United States in the Eastern District of Texas, in her individual capacity to recover damages for the death of her son who was killed in Kansas, and she alleged in her original complaint that in the State of Kansas a right of action was provided by statute for injuries resulting in death. The defendant was engaged in interstate commerce and the interstate was killed while employed in that commerce. The plaintiff could not sue in her individual capacity under the Federal act. More than two years after the injury the Circuit Court permitted an amendment by which she was allowed to prosecute the action as administratrix of her son. The Supreme Court of the United States approved the amendment and held that it was not equivalent to the (138) commencement of a new action so as to render it subject to the two years limitation prescribed by section 6 of the Employers' Liability Act, and that the amendment related back to the beginning of the action.
R. R. v. Wyler, 158 U.S., which is relied on by defendant, is commented upon in the Wulf case and distinguished, and it was pointed out that in theWyler case the amendment introduced a new and distinct cause of action, while in the case before us there is but one cause of action, and if the original complaint was defective it is only because of the absence of one allegation necessary to a complete and perfect statement of a cause of action.
The Employee's Liability Act confers concurrent jurisdiction upon the State courts for the trial of causes of action arising thereunder and, instead of prescribing the practice and procedure for the State courts, it is provided in another act of Congress as to actions at law in the Federal courts (and this falls within that class), that "The propriety of amendments to pleadings in the Circuit and District Courts of the United States is governed by the provisions of section 1914 of the Revised Statutes to the effect that: The practice, pleadings and form and mode of proceeding in civil causes other than equity and admiralty causes in the Circuit and District Courts shall conform as near as may be to the practice, pleadings and form and mode of proceeding existing at the time in like causes in the courts of record of the State within *Page 187 
which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding. 1 Ency. U.S., 298."
If, therefore, the action had been commenced in a court of the United States the power would have existed of "inserting other allegations material to the case" in conformity with our statute (Rev., sec. 507), and this power cannot be less when the action is brought in the courts of the State.
If a proposed amendment cannot be allowed because material and necessary to the statement of a cause of action, the power of amendment, which Mr.Justice Swayne says, in Tilton v. Cofield, 93 U.S. ___ "is incidental to he exercise of all judicial power and is indispensable to the ends of justice," becomes useless and of no effect, as an amendment need not be made if not material.
We therefore conclude that the court had the power to allow the amendment, and this also disposes of the exception to charge upon the sixth issue because the amendment related back to the commencement of the action, which was brought within two years from the time of the injury.
The defendant also relies, in his motion for nonsuit, upon the contention that there is no evidence of negligence, and this necessitates an examination of the duty imposed upon the employer and whether the evidence discloses a failure to perform that duty, which (139) proximately caused the injury to the plaintiff.
In R. R. v. Horton, 233 U.S. 492, the Court says: "The common law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence is exercised, to the end that the place in which the work is to be performed and the tools and appliances for the work may be safe for the workmen," and concludes that the Employees' Liability Act has not changed this rule of liability.
It being, then, the duty of the defendant to furnish the plaintiff a reasonably safe place in which to do his work, and the authorities are all to this effect, is there any evidence that it failed in the performance of this duty?
The plaintiff was injured at night and he testifies that he was exercising due care for his own safety. He had not been about the premises where he was injured on the day of the injury until he was injured.
There is evidence that an employee of the defendant whose duty it was to pump water into the tank unnecessarily permitted the pump to continue working after the tank was full, and that this caused water to pour out upon the path over which the plaintiff was required to go in the performances of his duties; that this continued for such a length *Page 188 
of time that a solid sheet of ice formed across the path; that the ice was smooth, slippery and dangerous, that the weather was very cold and that it might be reasonably anticipated that ice would form where the water fell; that this continued during the day before the plaintiff was injured and that the ice could have been easily removed; that a sufficient work force was present and available to remove ice from the that it did not do so; that this work force had removed ice from the pathway nearer to the station than the place where the plaintiff was injured; that the ice was covered with snow which concealed its presence from the plaintiff. This furnished some evidence that the defendant had failed in the performance of its duty to provide a reasonably safe place for plaintiff to work, and a evidence further shows that the plaintiff was injured by the failure to perform his duty. We therefore conclude that the judgment of nonsuit was properly overruled.
The charge of his Honor as to the duty of the defendant to provide a safe place is substantially taken from the Horton case, which we have before cited, and the same case sustains the ruling refusing to direct a verdict in favor of the defendant on the issue of assumption of risk. In that case Court says: "Such dangers as are normally and necessarily incident to the occupation are presumably taken into the (140) account in fixing the rate of wages, and a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort not naturally incident to the occupation, may arise out of failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."
His Honor followed this statement of the law, quoting this language from the opinion, and saying further: "If, by the exercise of ordinary care and prudence (it was the duty that he owed), he could have seen that the ice accumulated at the place, and could have become aware that there was risk in walking over it, then he would be charged with such facts as the exercise of such ordinary care would have disclosed to him, and if you are satisfied that they would have disclosed to him that the ice was there and that it was slippery, then you will find that he has assumed the risk of the injury in passing over it, and in that event he would answer the second issue `Yes'." And again, "That the plaintiff in his employment fixing pumps for the defendant, and in going from place to place in the performance of his duty, assumed the risk which inclement weather added to his employment, and *Page 189 
if you find by the greater weight of the evidence that the plaintiff slipped on the ice or snow, which resulted solely from the inclement weather conditions, and that the same were not negligently left on the path over which he was traveling, if he was traveling over the path, you will answer the issue of assumption of risk, the second issue, `Yes.'" And again, "If you find from the evidence, by the preponderance thereof, that the plaintiff knew of the existence of the ice at the place where he fell, or by the exercise of care, the care of a prudent man, could have knowledge of its existence at that point, he assumed the risk of injury from slipping thereon, and you will answer the issue of assumption of risk, which is issue No. 2,`Yes.'"
This compiles with the rule laid down in the Horton case, because if the evidence of the plaintiff is true, the condition of the place where the plaintiff was injured was not normal, but was unusual, and the plaintiff could not discover it by the exercise of ordinary care.
The witness Parks was asked: "Why was the tank running over?" Objection by the defendant. Objection overruled; defendant excepted. He replied: "Because the pumper was neglecting his duty and let it continue to run after the tank was full." We do not approve of the expression, "because the pumper was neglecting his duty," and doubtless if defendant had moved to strike this out as an expression (141) of opinion the motion would have been granted, but the motion to strike out was made upon another ground and one which is not tenable — that this particular act of negligence was not alleged in the complaint, and it is well settled that "Where a party states the ground of his objection to evidence below he cannot rely upon a different ground in this court." Ludwick v. Penny, 158 N.C. 113.
In Presnell v. Garrison, 122 N.C. 595, Furches, J., says: "But as a wrong reason was assigned for the objection, we treat the case as if no objection had been taken"; and Rollins v. Henry, 78 N.C. 342; Kidder v.McIlhenny, 81 N.C. 123, and Jones v. Call, 93 N.C. 179, support the same rule.
It was not necessary to allege the negligent act of permitting the tank to run over, in the complaint, because the negligence relied on is that the defendant did not provide a safe place for the plaintiff to work, and evidence that the tank ran over was competent under this allegation for the purpose of showing that the ice did not form across the path from natural causes.
If, however, his Honor had been asked to strike out the answer of the witness upon the ground that it was an expression of opinion, his refusal to do so would not have constituted reversible error, because when the answer is considered as a whole and in connection with the context it amounts to no more than a statement that the pumper permitted *Page 190 
the pump to continue to run, and the tank ran over, which is a fact and not an opinion.
The plaintiff while on the witness stand was asked: "Did you cause your own fall in any way?" Objection by the defendant; objection overruled; defendant excepted; and he replied: "No, I did not. I was just as careful walking as I could be." Phifer v. R. R., 122 N.C. 940, is authority for the position that the later part of the answer is objectionable as an expression of an opinion, but the later cases and the trend of authority elsewhere are that it is competent as a statement of a fact. Taylor v.Security Co., 145 N.C. 385; Britt v. R. R., 148 N.C. 40; S. v. Leak,156 N.C. 647; 3 Wig. Ev., sec. 1938; McKelvey Ev., p. 220.
Professor Wigmore says, vol. 3, sec. 1949; "This topic is one of the few upon which there has ever existed in the English precedents any foundation for doubt. The subject of the testimony in question is manifold; sometimes it is whether proper care was taken, sometimes whether action was reasonable, sometimes whether sufficient skill was shown, sometimes whether a place or a machine was safe; but all the forms seen reducible to a general one, namely, whether a certain standard of conduct was observed. Looking first at the orthodox (142) practice in England, it is clear there is not and never has been any real question as to the propriety of such testimony. The morbid and doctrinaire theory of cautiousness which is the foundation of the American rulings has never been known at the English bar." He speaks of the rule of exclusion as a "modern excrescence on the common law" and concludes that such evidence is competent.
Mr. McKelvey, in a passage quoted with approval in S. v. Leak, says: "The instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, matters of fact, and are admissible in evidence. A witness may say that a man appeared intoxicated or angry or pleased. In one sense the statement is a conclusion or opinion of the witness, but in a legal sense, and within the meaning of the phrase, `matter of fact,' as used in the law of evidence, it is not opinion, but is one of the class of things above mentioned, which are better regarded as matters of fact. The appearance of a man, his actions, his expression, his conversation — a series of things — go to make up the mental picture in the mind of the witness which leads to a knowledge which is as certain, and as much a matter of fact, as if he testified, from evidence presented to his eyes, to the color of a person's hair or any other physical fact of like nature. This class of evidence *Page 191 
is treated in many of the cases as opinion admitted under exception to the general rule, and in others as matter of fact — `shorthand statement of fact' — as it is called. It seems more accurate to treat it as a fact, as it embraces those impressions which are practically instantaneous, and require no conscious act of judgment in their formation. The evidence is almost universally admitted, and very properly, as it is helpful to the jury in aiding to a clearer comprehension of the facts."
In S. v. Williams, 168 N.C. 195, expressions in dying declarations "I did nothing," "He cut me for nothing," "They had no occasion to shoot me," "I have done nothing to be shot for," are considered as statements of facts and not opinions. If, however, evidence was objectionable it could have had but little, if any, bearing upon the issue, because the plaintiff described his conduct in detail and showed he was careful, and there was no evidence to the contrary.
We might also dispose of the exception upon the ground that it was competent for the witness to say he did not cause his own fall, and if the answer went beyond the question the remedy of the defendant was to move to strike out. Caton v. Toler, 160 N.C. 106.
The judges of the Superior Court should be careful in the application of this principle to see that opinions are not admitted under the guise of facts, and usually it is better and wiser to require the (143) witness to state the circumstances surrounding the transaction and no more.
We have carefully considered the whole record and find no error.
No error.