FRANK H. MARSHALL, BY HIS NEXT FRIEND, v. INTERSTATE TELEPHONE AND TELEGRAPH COMPANY.

(Filed 27 April, 1921.)

**1. Evidence—Witnesses—Opinion Upon the Facts.**

> The exception to the general rule, which admits the opinion of a witness upon the facts, has no application where the facts may be separately stated, and the testimony is the expression of the witness' opinion of the facts at issue for the jury to determine.

**2. Same—Appeal and Error—Dangerous Instrumentalities—Electricity—Employer and Employee.**

> The plaintiff was employed by a telephone company as a lineman, and there was evidence tending to show that the lines of a power company, a different one, were strung upon the same line of poles, etc.; that the power company's lines at places were negligently and dangerously close to those of the telephone company, with improper insulation, and that the plaintiff's injury was caused by the high voltage of electricity on the wires of the power company communicated to the wires of the telephone company, in themselves harmless, while the intestate was engaged in the scope of his duties on his employer's wires: *Held*, the opinion of a witness that the place was not safe was improperly admitted, and constituted reversible error, the action being based on failure to provide safe place to work.

HOKE, J., dissenting; CLARK, C. J., concurring in the dissenting opinion.

APPEAL by defendants from *Allen, J.,* at the September Term, 1920, of DURHAM.

This is an action brought by the plaintiff, a minor, through his next friend, to recover damages for the loss of his arm and other injuries, resulting from the alleged negligence of the two defendants.

The plaintiff offered evidence tending to prove the following facts:

The plaintiff was nineteen years of age at the time of his injury in October, 1919. He was employed by the defendant, Interstate Tele-

phone and Telegraph Company, in 1918 as general utility boy or apprentice lineman, at $2 per day, and had been climbing poles some four to six months prior to the injury, and was then getting $3 per day. He had been working for the defendant telephone company about fourteen months.

On 21 October, 1919, L. D. Darnell, four colored laborers, and plaintiff composed the crew of the defendant telephone company that was sent to Vickers Avenue, in the city of Durham, N. C., to string two new telephone wires down said avenue southwardly from Chapel Hill Street and along the west side of Vickers Avenue. Both of the defendants had poles and wires along the west side of said avenue, and at some places the wires were attached to the same poles and at others to separate poles. The poles of the telephone company were taller than the traction company poles, and the phone wires were above the power wires of the defendant traction company. About three or four poles southward from Chapel Hill Street, and in a line with said poles and wires, there was a sycamore tree as tall or taller than the highest poles and wires, with a large number of outspreading branches, through which the wires of both the defendants run and mix together through the branches of said tree, and in some instances are from four to six inches apart. The insulation was worn off of the electric power wires, which carry a voltage of 2,300, in several places in and near the sycamore tree. The distance between the cross-arms of the two companies are not uniform, but run from fourteen inches to two feet apart. At one place near where the plaintiff was injured the power or primary wires of the traction company are separated from the telephone company's wires only by the thickness of a piece of plank or board. The defendant traction company had two 2,300 voltage primary or power wires and one arc circuit, and the telephone company from forty to sixty wires running along this line. The telephone wires carry no voltage or electricity, and within themselves are not dangerous to handle.

When the crew arrived at Vickers Avenue for the purpose of stringing phone wires, plaintiff would climb one pole and Darnell the other, and the colored laborers would throw up the tie-ropes and play off the wire. When plaintiff had gone up the fifth pole, to which pole the wires of both companies are attached, and had passed the cross-arm carrying the wires of the traction company, and had dead-ended one of the new wires he was stringing, and with his spikes fastened in the pole, and with one hand holding iron brace, he had leaned back a little and was waiting for the tie-rope, with the other wire, to be thrown to him, when he was caught with an electric current, severely burning his hand and shoulder, and remained there until he was burned into unconsciousness, from thirty to forty minutes, and until the fire department came and took him down.

There was evidence on the part of the defendants in contradiction of much of the evidence of the plaintiff.

A witness for the plaintiff, who had examined the place of the injury, was asked the following question:

"State whether or not the conditions as you found them over there of these wires were in a safe condition." To which question the defendants objected. Objection overruled, and defendants excepted.

The witness answered that they were not safe.

There were other exceptions taken by defendants not necessary to be stated.

There was a verdict and judgment for the plaintiff, and defendants appealed.

*Brawley & Gantt for plaintiff.*
*Bryant & Brogden and W. L. Foushee for defendant.*
*Fuller, Reade & Fuller for telephone company.*

ALLEN, J. The general rule is that the opinion of a witness is not competent evidence; he must state facts, and let the jury form the opinion. *Horton v. Green,* 64 N. C., 66.

There is, however, a well-recognized exception to the rule, and "It includes the evidence of common observers testifying the results of their observations made at the time in regard to common appearances, facts and conditions which cannot be reproduced and made palpable to a jury." *Britt v. R. R.,* 148 N. C., 41.

This is sometimes spoken of as the "shorthand statement of a fact" or as the statement of a "composite or compound fact," several circumstances combining to make another fact, and the tendency of the courts is to enlarge and not restrict this class of evidence (*Lumber Co. v. R. R.,* 151 N. C., 221), because frequently its exclusion would prevent the proper development of the cause of action or defense and injurious effect, if the statement of the witness is not true, may be obviated by cross-examination and the intelligence of the jury.

We have permitted witnesses to testify that a pole on which wires were strung could have been placed differently and a source of danger eliminated (*Horne v. Power Co.,* 144 N. C., 378); that two chains would be safer than one, a fact which, it would seem, would be self-evident (*Britt v. R. R.,* 148 N. C., 41); that a car, used in manufacturing iron, was defectively made (*Alley v. Pipe Co.,* 159 N. C., 328); that a voltage of 110 was not dangerous (*Monds v. Dunn,* 163 N. C., 110), and there are other instances, but the exception has as its foundation, necessity arising from the difficulty, and frequently the impossibility of so placing a number of complicated facts before a jury that

the proper deduction may be drawn from them, when a single state-
ment, conveying the impression on the mind of the witness of all the
facts, the combination considered together constituting a fact, could be
easily understood, and the exception is subject to the limitation that
the opinion or inference of the witness must not be on the exact issue
to be determined by the jury.

As said in McKelvy on Evidence, p. 176: "It is a method of placing
before the jury, in a general and broad way, a group of facts which, in
detail, would be difficult of description, but which, as a whole, make up
a certain conception, grasped at once by the mind.

"The admissibility of such evidence does not extend to cases where
it would not prove helpful to the jury, nor where its application would
carry the witness into an expression of real opinion upon matters which
it is the jury's province to decide."

This rule, excluding the opinion of a witness on the point in issue,
has been approved in *Summerlin v. R. R.,* 133 N. C., 550; *Lynch v.
Mfg. Co.,* 167 N. C., 99, and in other cases.

Applying these principles, it was error to permit the witness to
express the opinion that the place where the plaintiff was working was
not safe.

The facts were few and easily understood—two sets of wires on one
pole, the voltage of the wires, their proximity, whether without insula-
tion or not, the fact that they passed through a sycamore tree with
swaying limbs, the injury to the plaintiff—and the jury ought to have
been permitted to draw the inferences from the evidence instead of the
witness.

It was also an expression of opinion on the most important issue
raised by the pleadings, it being alleged in the complaint, and denied
in the answer, that the defendants failed to furnish the plaintiff a safe
place to work.

In view of the pleadings the witness might as well have been per-
mitted to say that in his opinion the defendants were negligent as to
say that the place where the plaintiff was working was not safe.

In *Marks v. Cotton Mills,* 135 N. C., 289, the Court, while discussing
the admissibility of an opinion expressed by a witness, uses language
very pertinent here. The Court says: "The witness, in our judgment,
was permitted to invade the province of the court and the jury in thus
testifying. A witness should state facts, the jury should find the facts,
and the court should declare and explain the law. The functions of the
three within their several spheres are clearly defined, and should always
be kept separate and distinct. Whether the speeder was so constructed
as that its operation was safe to the defendant's employees was the
very question upon which the parties were at issue and which the jury

were impaneled to decide. The witness' opinion upon that question was incompetent, and the plaintiff's objection to it should have been sustained."

The case of *Hoyle v. Hickory,* 167 N. C., 619, does not decide that a witness may say that certain conduct was negligent, but that the opinion of experts, as to whether streets were properly graded, were not conclusive on the jury.

There must be a

New trial.

HOKE, J., dissenting: I am unable to concur in the decision awarding a new trial on the ground stated in the opinion. There are facts in evidence tending to show that on 21 October, 1919, the defendants, the telephone and telegraph company and the traction company, had their poles and wires along Vickers Avenue, in the city of Durham, and at places and at the point of the occurrence these wires were strung upon the same poles; that the telephone company's wires were in themselves harmless, but the wires of the traction company, two primary wires, each carried 2,300 voltage, and that while it was at times permitted to place such wires on same poles there were recognized rules for the placing of the wires, established by municipal regulations, as necessary to the safety of employees and others engaged in working with or about the same which had been twisted; that at the time of the occurrence plaintiff, employed as lineman by the telephone company, was engaged with others in stringing some additional wires, and as he ascended one of the poles for the purpose he was caught by a current of electricity transmitted from the traction wires and held helpless for some thirty-five or forty minutes, and had his arm burned off, or so severely burned that amputation became necessary, and received other severe burns which caused him great suffering and seriously impaired his health and strength, etc. For this injury, caused by the alleged negligence of both defendants, after an arduous trial involving expenditure of much time and strength, and incurring of much costs and expense, plaintiff has been awarded compensatory damages by the jury, and all this is to be entirely done away with because, as stated, a witness was allowed to say, over defendant's objection, that at the time and place of the injury the wires of the two companies were not in a safe condition, and this on the ground chiefly that the witness was thereby giving an opinion as to a principal question involved in the issue.

The witness who was allowed to make this statement was Chester Whitaker, the city electrician, and had been for more than seven years. He was on the ground about thirty minutes after the occurrence, when there was no suggestion of any change, and he spoke from personal observation of the facts and conditions to which he testified; that he

had formerly been employed by the traction company for eight years
and by the Carolina Light and Power Company for two years, and had
had twelve or fourteen years experience in this line of work. And in
further bearing on the correctness of his Honor's ruling in this matter,
it appears from the record, and without substantial dispute, that forty
or fifty feet west of the pole on which plaintiff received his injuries
the wires of both companies ran through a sycamore tree, and there
the insulation of the primary wires of the traction company had worn
off for two or three inches, and that the swaying boughs of the tree
afforded a not improbable means of connection between this exposed
wire carrying, as stated, a 2,300 voltage and the telephone wires of the
other defendant. And that sixty to eighty feet east of the place of
injury the wires of the telephone company were carried over a small
piece of plank laid on the top of the glass knobs or insulators of a
cross-arm of a traction company pole, and affording a separation be-
tween these wires and the high voltage wires of the traction company
of not more than six inches.

From this, a statement of the facts chiefly relevant to the question
presented, and considered in connection with the fact, also admitted,
that plaintiff, in performing his duty as lineman for the telephone com-
pany, had been caught by a strong current of electricity and held for
thirty-five or forty minutes and till his arm was practically burned off
and other serious injuries inflicted, the testimony objected to should not
be held for reversible error for the reason that it was entirely harmless.
The danger of the conditions presented would seem to stand revealed.

The wholesome principle that a new trial should not be granted for
slight errors which could have worked no substantial prejudice to appel-
lant's cause has been again and again approved in our decisions, and
has nowhere been stated more clearly than in a recent case of *Brewer v.
Ring, etc.,* 177 N. C., 476-484, where *Associate Justice Walker,* in deliv-
ering the opinion, said: "Courts do not lightly grant reversals or set
aside verdicts on grounds which show the alleged error to be harmless
or where the appellant could have sustained no injury from it. There
should be at least something like practical treatment of a motion to
reverse, and it should not be granted except to serve the ends of sub-
stantial justice, citing Hilliard on New Trials (2d Ed.), secs. 1-7."

The same position was stated with approval and applied in a subse-
quent decision, *Powell v. R. R.,* 178 N. C., 243, where, in reference to
some trivial error suggested in the course of the trial, the Court said:
"No jury could have been misled or failed to apprehend fully the sig-
nificance of the issue and the evidence relevant to its proper determina-
tion, and assuredly there is no case presented for reversible error. This
cause, requiring much time and work, has been fully and carefully tried
with the assistance of competent, alert, and diligent counsel on both

sides. The determinative issues have been fairly decided, and the results of the hearing should not be disturbed unless it is reasonably made to appear that the appellant's defense has been prejudiced in some way by substantial error." And *S. v. Stancill,* 178 N. C., 683, and *Griffin v. R. R.,* 138 N. C., 55; *West v. Grocery Co.,* 138 N. C., 166, and many other well-considered decisions with us are to like effect. And if the statement of the witness is to be taken as having significance it is to my mind clearly competent, and in no event should it be excluded on the ground advanced in the decision of the Court "That it is an opinion on a fact directly involved in the issue." This position that opinion evidence otherwise competent must be excluded for the reason suggested has to my mind been very much overworked in some of the decisions in the American courts, and with the result that both courts and juries have been deprived of much proper and helpful evidence in the trial of causes before them. As applied in these cases, the doctrine has been criticized by intelligent writers on the law of evidence, and disapproved in the more recent and better considered decisions on the subject. 3d Wigmire on Evidence, secs. 1919-1920. And, accordingly, in my judgment it is now the approved principle that on relevant facts properly established, and on "questions of science and skill, opinions may be received from persons specially instructed by study and experience in the particular art or mystery to which the investigation relates." And on pertinent facts coming under their personal observation, witnesses who are not in strictness scientific experts may give an opinion relevant to the issue when they are shown to be qualified by training and experience to so aid the jury in coming to a correct conclusion. *Caton v. Toler,* 160 N. C., 104; *Tire Co. v. Whitehurst,* 148 N. C., 446; *Hardy v. Merrill,* 56 N. H., 227-241; McKelvey on Evidence, pp. 230-231; 1st Elliott, sec. 675. In many cases the opinion or estimate or mental inference of such a witness, based upon such facts, is the only way that the evidence can be properly presented, and in such instances, when otherwise competent, it should not be excluded merely because it may be on a fact directly involved in the issue. And our more recent decisions are in full approval and illustration of the principle as stated. Thus, in *Britt v. R. R.,* 148 N. C., 37, question of negligence by an employer in not supplying chains of sufficient strength to pull heavy logs into a car, a witness, taking part and having personal knowledge and observation of conditions, was allowed to state "That a double chain would have been safer than the single one the employees were using."

In *Hux v. Reflector Co.,* 173 N. C., 97, suit by employee for negligent injury in supplying a defective printing press, and witness, "plaintiff, was allowed to state that the press was out of date, old, and worn."

In *Renn v. R. R.,* 170 N. C., 128-141, action for negligence in affording improper place for employee to do his work by which he stepped on the ice and was severely injured. On the question of contributory negligence witness was asked, "Did you cause your own fall in any way?" Answer: "No, I did not. I was just as careful walking as I could be." In disallowing defendant's exception, *Associate Justice Allen* in his opinion said: *"Phifer v. R. R.,* 122, N. C., 940, is authority for the position that the latter part of the answer is objectionable as an expression of opinion, but the later cases and the trend of authority elsewhere are that it is competent as a statement of a fact. *Taylor v. Security Co.,* 145 N. C., 385; *Britt v. R. R.,* 148 N. C., 40; *S. v. Leak,* 156 N. C., 647; 3 Wig. Ev., sec. 1938; McKelvey Ev., p. 220, and quoted with approval from Professor Wigmore, Vol. III, sec. 1949, as follows: 'This topic is one of the few upon which there has never existed in the English precedents any foundation for doubt. The subject of the testimony in question is manifold; sometimes it is whether proper care was taken, sometimes whether action was reasonable, sometimes whether sufficient skill was shown, sometimes whether a place or a machine was safe; but all the forms seem reducible to a general one, namely, whether a certain standard of conduct was observed. Looking first at the orthodox practice in England, it is clear there is not and never has been any real question as to the propriety of such testimony. The morbid and doctrinaire theory of cautiousness, which is the foundation of the American rulings, has never been known at the English bar.' He speaks of the rule of the exclusion as a 'modern excrescence on the common law' and concludes that such evidence is competent."

In the present instance the witness was an experienced electrician who spoke from personal observation of the relevant conditions presented. He saw that plaintiff, in climbing the pole, had to pass the traction wires of one of the defendants and attach the telephone wires to the poles, doing his work just above the traction wires. He saw that these traction wires, carrying a heavy voltage, were exposed just below the pole where they ran through a sycamore tree, and affording conditions that rendered contact between two sets of wires highly probable. He saw conditions that threatened immediately on the other side of the pole where plaintiff was working and received his injury, and with these facts in his possession it was strictly within line of correct principles and directly in accord with our decided cases that this witness was allowed to testify that the conditions presented and personally observed by him were not safe. In my opinion, as stated, the testimony was clearly competent, and if otherwise, it should be disregarded as not amounting to reversible error.

CLARK, C. J., concurs with HOKE, J.