HOKE, J., dissenting; CLARK, C. J., concurring in the dissenting opinion.
This is an action brought by the plaintiff, a minor, through his next friend, to recover damages for the loss of his arm and other injuries, resulting from the alleged negligence of the two defendants.
The plaintiff offered evidence tending to prove the following facts:
The plaintiff was nineteen years of age at the time of his injury in October, 1919. He was employed by the defendant, Interstate *Page 293 
Telephone and Telegraph Company, in 1918 as general utility boy or apprentice lineman, at $2 per day, and had been climbing poles some four to six months prior to the injury, and was then getting $3 per day. He had been working for the defendant telephone company about fourteen months.
On 21 October, 1919, L. D. Darnell, four colored laborers, and plaintiff composed the crew of the defendant telephone company that was sent to Vickers Avenue, in the city of Durham, N.C. to string two new telephone wires down said avenue southwardly from Chapel Hill Street and along the west side of Vickers Avenue. Both of the defendants had poles and wires along the west side of said avenue, and at some places the wires were attached to the same poles and at others to separate poles. The poles of the telephone company were taller than the traction company poles, and the phone wires were above the power wires of the defendant traction company. About three or four poles southward from Chapel Hill Street, and in a line with said poles and wires, there was a sycamore tree as tall or taller than the highest poles and wires, with a large number of outspreading branches, through which the wires of both the defendants run and mix together through the branches of said tree, and in some instances are from four to six inches apart. The insulation was worn off of the electric power wires, which carry a voltage of 2,300, in several places in and near the sycamore tree. The distance between the cross-arms of the two companies are not uniform, but run from fourteen inches to two feet apart. At one place near where the plaintiff was injured the power or primary wires of the traction company are separated from the telephone company's wires only by the thickness of a piece of plank or board. The defendant traction company had two 2,300 voltage primary or power wires and one are circuit, and the telephone company from forty to sixty wires running along this line. The telephone wires carry no voltage or electricity, and within themselves are not dangerous to handle.
When the crew arrived at Vickers Avenue for the purpose of stringing phone wires, plaintiff would climb one pole and Darnell the other, and the colored laborers would throw up the tie-ropes and play off the wire. When plaintiff had gone up the fifth pole, to which pole the wires of both companies are attached, and had passed the cross-arm carrying the wires of the traction company, and had dead-ended one of the new wires he was stringing, and with his spikes fastened in the pole, and with one hand holding iron brace, he had leaned back a little and was waiting for the tie-rope, with the other wire, to be thrown to him, when he was caught with an electric current, severely burning his hand and shoulder, and remained there until he was burned into unconsciousness, from thirty to forty minutes, and until the fire department came and took him down. *Page 294 
There was evidence on the part of the defendants in contradiction of much of the evidence of the plaintiff.
A witness for the plaintiff, who had examined the place of the injury, was asked the following question:
"State whether or not the conditions as you found them over there of these wires were in a safe condition." To which question the defendants objected. Objection overruled, and defendants excepted.
The witness answered that they were not safe.
There were other exceptions taken by defendants not necessary to be stated.
There was a verdict and judgment for the plaintiff, and defendants appealed.
The general rule is that the opinion of a witness is not competent evidence; he must state facts, and let the jury form the opinion. Horton v.Green, 64 N.C. 66.
There is, however, a well-recognized exception to the rule, and "It includes the evidence of common observers testifying the results of their observations made at the time in regard to common appearances, facts and conditions which cannot be reproduced and made palpable to a jury." Brittv. R. R., 148 N.C. 41.
This is sometimes spoken of as the "shorthand statement of a fact" or as the statement of a "composite or compound fact," several circumstances combining to make another fact, and the tendency of the courts is to enlarge and not restrict this class of evidence (Lumber Co. v. R. R.,151 N.C. 221), because frequently its exclusion would prevent the proper development of the cause of action or defense and injurious effect, if the statement of the witness is not true, may be obviated by cross-examination and the intelligence of the jury.
We have permitted witnesses to testify that a pole on which wires were strung could have been placed differently and a source of danger eliminated (Horne v. Power Co., 144 N.C. 378); that two chains would be safer than one, a fact which, it would seem, would be self-evident (Britt v. R. R.,148 N.C. 41); that a car, used in manufacturing iron, was defectively made (Alley v. Pipe Co., 159 N.C. 328); that a voltage of 110 was not dangerous (Monds v. Dunn, 163 N.C. 110), and there are other instances, but the exception has as its foundation, necessity arising from the difficulty, and frequently the impossibility of so placing a number of complicated facts before a jury that *Page 295 
the proper deduction may be drawn from them, when a single statement, conveying the impression on the mind of the witness of all the facts, the combination considered together constituting a fact, could be easily understood, and the exception is subject to the limitation that the opinion or inference of the witness must not be on the exact issue to be determined by the jury.
As said in McKelvy on Evidence, p. 176: "It is a method of placing before the jury, in a general and broad way, a group of facts which, in detail, would be difficult of description, but which, as a whole, make up a certain conception, grasped at once by the mind.
"The admissibility of such evidence does not extend to cases where it would not prove helpful to the jury, nor where its application would carry the witness into an expression of real opinion upon matters which it is the jury's province to decide."
This rule, excluding the opinion of a witness on the point in issue, has been approved in Summerlin v. R. R., 133 N.C. 550; Lynch v. Mfg. Co.,167 N.C. 99, and in other cases.
Applying these principles, it was error to permit the witness to express the opinion that the place where the plaintiff was working was not safe.
The facts were few and easily understood — two sets of wires on one pole, the voltage of the wires, their proximity, whether without insulation or not, the fact that they passed through a sycamore tree with swaying limbs, the injury to the plaintiff — and the jury ought to have been permitted to draw the inferences from the evidence instead of the witness.
It was also an expression of opinion on the most important issue raised by the pleadings, it being alleged in the complaint, and denied in the answer, that the defendants failed to furnish the plaintiff a safe place to work.
In view of the pleadings the witness might as well have been permitted to say that in his opinion the defendants were negligent as to say that the place where the plaintiff was working was not safe.
In Marks v. Cotton Mills, 135 N.C. 289, the Court, while discussing the admissibility of an opinion expressed by a witness, uses language very pertinent here. The Court says: "The witness, in our judgment, was permitted to invade the province of the court and the jury in thus testifying. A witness should state facts, the jury should find the facts, and the court should declare and explain the law. The functions of the three within their several spheres are clearly defined, and should always be kept separate and distinct. Whether the speeder was so constructed as that its operation was safe to the defendant's employees was the very question upon which the parties were at issue and which the jury *Page 296 
were impaneled to decide. The witness' opinion upon that question was incompetent, and the plaintiff's objection to it should have been sustained."
The case of Hoyle v. Hickory, 167 N.C. 619, does not decide that a witness may say that certain conduct was negligent, but that the opinion of experts, as to whether streets were properly graded, were not conclusive on the jury.
There must be a
New trial.